## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and among Snyder's-Lance, Inc., as a successor-in-interest to S-L Distribution Company, LLC ("S-L") and Plaintiff Benjamin Maranzano ("Named Plaintiff") and the Settlement Class[1] of individuals that Named Plaintiff and Class Counsel represent for settlement purposes only. Named Plaintiff, Class Counsel, and S-L hereby stipulate and agree that, in consideration of the promises and covenants as set forth in this Agreement and upon entry by the Court of a Final Order and Judgment, all claims of Named Plaintiff and the Qualified Settlement Class Members in the Action shall be settled, compromised, and released upon the terms and conditions contained herein.

## RECITALS

WHEREAS, Named Plaintiff filed a class action lawsuit under the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. §§ 34:11-4.1, *et seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, *et seq.*, in the United States District Court for the Middle District of Pennsylvania alleging that S-L misclassified him and the Settlement Class as independent contractors rather than as employees;

WHEREAS, Named Plaintiff sought recovery of, among other things, overtime wages, minimum wage compensation, expense reimbursement and wage deduction damages, liquidated damages, penalties, attorneys' fees, interest, and costs;

WHEREAS, S-L denied and continues to deny all of the allegations made by Named Plaintiff and Settlement Class Members in the Action, and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Action, or that any claims asserted by Named Plaintiff or Settlement Class Members may proceed on a class or collective basis. Nonetheless, without admitting or conceding any arguments, issues, liability, or damages whatsoever, including that S-L is an employer or joint employer of Named Plaintiff, Settlement Class Members, or anyone on whose behalf Named Plaintiff has attempted to bring claims, or that any claims alleged in the Action may proceed on a class or collective basis, S-L has agreed to settle the Action on the terms and conditions set forth in this Agreement to avoid the burden and expense of continuing to defend against litigation;

WHEREAS, Class Counsel has conducted extensive formal discovery including, but not limited to, taking and defending depositions (including the deposition of Named Plaintiff), propounding and responding to written discovery, and reviewing and analyzing thousands of documents produced by the Parties, and engaging in numerous discussions with S-L's counsel regarding the claims;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against S-L in the Action, and the impact of this Settlement on Named Plaintiff and the Settlement Class;

---

[1] The capitalized terms herein are defined either in Section 1 (Definitions) or elsewhere in the body of this Agreement.

WHEREAS, this Agreement resulted from and is the product of extensive, good faith, and arm's-length negotiations. The Parties participated in private mediation in November 2020, and engaged in extensive follow-up discussions with the help of a nationally recognized mediator and exchanged many rounds of drafts of a settlement term sheet to memorialize the terms of the Settlement;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of litigation with respect to certain claims, including that the Action, if not settled now, might result in a recovery that is less favorable to Named Plaintiff and the Settlement Class, and that would not occur for several years, or at all, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Named Plaintiff and Settlement Class;

WHEREAS, as a result of these efforts, the Parties entered into this Agreement, subject to approval by the Court, to fully, finally, and forever resolve, discharge, and release all rights and claims of Named Plaintiff and the Settlement Class in exchange for S-L's agreement to pay a maximum total amount of One Million Three Hundred Thousand Dollars ($1,300,000.00) inclusive of all attorneys' fees, litigation costs, claims administration fees and expenses, interest, and a service award to Named Plaintiff;

WHEREAS, the Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims. It is the Parties' desire and intention to affect a full, complete, and final settlement and resolution of all existing disputes and claims as set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Action on the following terms and conditions:

## 1.    DEFINITIONS

1.1    **Action.** "Action" shall refer to the lawsuit filed by Named Plaintiff bearing the caption *Maranzano v. S-L Distribution Company, LLC*, Case No. 1:19-cv-01997 (M.D. Pa.).

1.2    **Agreement.** "Agreement" shall mean this Settlement Agreement and Release, and all exhibits.

1.3    **Applicable Workweeks.** "Applicable Workweeks" shall mean, for each Settlement Class Member, the following, as reflected in S-L's internal records: the number of complete or partial weeks during which the Settlement Class Member owned a distributorship from November 20, 2013 to October 20, 2021.

1.4    **Arbitration Claimants.** "Arbitration Claimants" shall mean the individuals, as identified by Class Counsel, who are pursuing or have threatened to pursue claims against S-L in individual arbitration proceedings.

1.5 **Claims Administrator.** "Claims Administrator" shall mean the entity selected by the Parties to administer payment of the Settlement to Named Plaintiff and Settlement Class Members.

1.6 **Class Counsel.** "Class Counsel" shall mean Winebrake & Santillo LLC and Lichten & Liss-Riordan, P.C.

1.7 **Complaint.** "Complaint" shall mean the Second Amended Class and Collective Action Complaint, attached hereto as Exhibit F, that Named Plaintiff will file for settlement purposes in the Action.

1.8 **Court.** "Court" shall mean the U.S. District Court for the Middle District of Pennsylvania.

1.9 **Effective Date; Effective**. The "Effective Date," or the date upon which this Agreement is Effective, is thirty-one (31) calendar days after entry of the Final Order and Judgment, if no appeal is filed. If an appeal is taken, then the Effective Date shall be thirty (30) days after the date the appeal is dismissed or denied and the judgment is no longer subject to appeal or other appellate review.

1.10 **Escrow Account.** "Escrow Account" shall mean the FDIC insured interest-bearing account(s) created and controlled by the Claims Administrator.

1.11 **Fairness Hearing**. "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

1.12 **Final Individual Settlement Amount**. "Final Individual Settlement Amount" shall mean the final gross amount sent to any Qualified Settlement Class Member under this Agreement.

1.13 **Final Order and Judgment**. "Final Order and Judgment" means an order that finally and unconditionally grants final approval of the Agreement, grants final certification of the Settlement Class for settlement purposes only, authorizes payments to Named Plaintiff and the Qualified Settlement Class Members as provided in this Agreement, and fully and finally extinguishes (i) the Non-FLSA Claims Released by Qualified Settlement Class Member Releasors; and (ii) the FLSA Claims Released by Qualified Settlement Class Member Releasors upon Qualified Settlement Class Members' negotiation of their Settlement checks, as set forth herein. A proposed version of the Final Order and Judgment shall be submitted to the Court in the form attached hereto as Exhibit C.

1.14 **Final Settlement Notice.** "Final Settlement Notice" means the Official Court Notice of Settlement to be sent to Qualified Settlement Class Members after the Court enters the Final Order and Judgment. A proposed version of the Final Settlement Notice shall be submitted to the Court in the form attached hereto as Exhibit D.

DocuSign Envelope ID: D5CD5EC1-5FD2-4AE7-B5F0-EA7731BDAA59

1.15    **Individual Settlement Amount**. "Individual Settlement Amount" shall mean the amount allocated to each Settlement Class Member pursuant to Section 3.6 of this Agreement.

1.16    **Maximum Settlement Amount**. "Maximum Settlement Amount" is the One Million Three Hundred Thousand Dollars ($1,300,000.00) S-L has agreed to pay to resolve this matter, as further discussed in Section 3.1, below.

1.17    **Named Plaintiff.** "Named Plaintiff" shall mean Benjamin Maranzano, and shall also include any and all of his representatives, business entities, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

1.18    **Net Settlement Fund.** "Net Settlement Fund" shall mean the remainder of the Settlement Fund after deductions for court-approved attorneys' fees and costs as described in Section 3.2, a court-approved service payment to Named Plaintiff as described in Section 3.3, Settlement Administration Expenses as described in Section 2.2, the Reserve Fund as described in Section 3.5, the Individual Settlement Amount of any Settlement Class Member who excludes him or herself from the Settlement pursuant to Section 2.6; any fees associated with investing and liquidating the Settlement Payment as described in Section 3.1, and any taxes incurred directly or indirectly as a result of investing the Settlement Payment. The Net Settlement Fund shall be used to pay all amounts due to Named Plaintiff (excluding the service payment) and Qualified Settlement Class Members pursuant to Section 3.6.

1.19    **Notice**. "Notice" means the Notice of Proposed Settlement, which is attached hereto as Exhibit A.

1.20    **Order Granting Preliminary Approval**. "Order Granting Preliminary Approval" shall mean the Order entered by the Court preliminarily approving, *inter alia*, the terms and conditions of this Agreement, the manner and timing of providing notice to the Settlement Class Members, and the time period for opt-outs and objections. A proposed version of the Order Granting Preliminary Approval shall be submitted to the Court in the form attached hereto as Exhibit B.

1.21    **Parties.** "Parties" shall refer to Named Plaintiff and S-L.

1.22    **Qualified Settlement Class Member**. "Qualified Settlement Class Member" shall mean a Settlement Class Member who does not opt out in the manner prescribed in Section 2.6 of this Agreement.

1.23    **Qualified Settlement Class Member Releasees.** "Qualified Settlement Class Member Releasees" shall mean Named Plaintiff, each Qualified Settlement Class Member, and each of their business entities, if any.

1.24    **Release Date.** "Release Date" shall mean January 15, 2022.

1.25 **Reserve Fund**. "Reserve Fund" shall mean an amount of Seventy-Five Thousand Dollars ($75,000) that will be taken from the Settlement Fund and retained by the Claims Administrator for purposes of adjusting upwards the Individual Settlement Amount of any Qualified Settlement Class Member who establishes (to the satisfaction of Class Counsel and S-L's Counsel) that his/her Applicable Workweeks have been undercounted. If the portion of the Reserve Fund that has not been distributed to Qualified Settlement Class Members totals Twenty Thousand Dollars ($20,000) or less, it shall be donated by the Claims Administrator to the Pennsylvania IOLTA Board as *cy pres* beneficiary. However, if the portion of the Reserve Fund that has not been distributed to Qualified Settlement Class Members exceeds Twenty Thousand Dollars ($20,000), it shall be redistributed to Qualified Settlement Class Members on a pro rata basis.

1.26 **Service Award.** "Service Award" means an amount approved by the Court to be paid to Named Plaintiff in recognition of the service he provided to the Settlement Class. As a condition of receiving a Service Award, Named Plaintiff shall agree to an individual general release agreement provided in Section 3.8(a) of this Agreement. The Service Award is to be paid in addition to Named Plaintiff's Final Individual Settlement Amount.

1.27 **Settlement.** The "Settlement" shall mean the settlement embodied by this Agreement, and all exhibits.

1.28 **Settlement Administration Expenses.** "Settlement Administration Expenses" are those expenses incurred and charged by the Claims Administrator in effectuating the Settlement.

1.29 **Settlement Class; Settlement Class Member; Class.** "Settlement Class" or "Class" shall refer to Named Plaintiff and the 82 other individuals previously identified by S-L who satisfy all of the following three criteria: (1) are or were a party to a Distributor Agreement with S-L; (2) owned and/or operated a route that included a retail customer in the State of New Jersey at any time between November 20, 2013 and October 20, 2021; and (3) who have not signed an alternative dispute resolution agreement with S-L. The Parties will move for class and collective certification, for settlement purposes only, in the Parties' Preliminary Approval Motion and/or Final Approval Motion.

1.30 **Settlement Fund.** The "Settlement Fund" shall mean the settlement fund created by the payment by S-L of up to the Maximum Settlement Amount of $1,300,000.00.

1.31 **S-L.** "S-L" shall refer collectively to the defendants in the Action, including S-L Distribution Company, LLC, S-L Routes, LLC, S-L Distribution Company, Inc., and Snyder's-Lance, Inc.

1.32 **S-L's Counsel.** "S-L's Counsel" shall mean Morgan, Lewis & Bockius LLP.

1.33 **S-L Releasees.** "S-L Releasees" shall mean S-L and their present, former and future affiliates, divisions, members, joint venture partners, subsidiaries, parents,

DocuSign Envelope ID: D5CD5EC1-5FD2-4AE7-B5F0-EA7731BDAA59

predecessors, any merged entity or merged entities and/or its or their present, former and future officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with them.

1.34    **Unclaimed Funds**.  "Unclaimed Funds" shall mean the aggregate amount of Final Individual Settlement Amounts that Qualified Settlement Class Members do not negotiate in a timely manner. All Unclaimed Funds shall be paid to the state unclaimed property fund in the state in which the relevant Qualified Settlement Class Member is last known to have resided.

## 2.    APPROVAL AND CLASS NOTICE

2.1    **Stipulation to Class and Collective Certification.**  The Parties stipulate, for settlement purposes only, to certification by the Court of a class and collective as to all claims encompassed by this Settlement.  If for any reason the Court does not approve this stipulation, or does not enter a Final Order and Judgment, or if the Settlement is lawfully terminated for any other reason, the stipulated certification of the class shall become null and void.  The fact of certification shall not be cited to, used, or admissible in any other judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

2.2    **Retention of Claims Administrator.**  The Claims Administrator shall be jointly selected by the Parties and shall be responsible for the claims administration process and distributions to the Qualified Settlement Class Members as provided herein, as well as for making any mailings and performing other services as required under this Agreement.  The Parties agree to cooperate with the Claims Administrator and assist it in administering the Settlement.   All Settlement Administration Expenses shall come out of the Settlement Fund.  If the Settlement is not given final approval by the Court and does not become Effective, the Parties shall equally bear the administration fees and costs.

2.3    **Preliminary Approval by the Court.**  Within fourteen (14) days after the execution of this Agreement, Named Plaintiff, with S-L's approval, will submit a Motion for an Order Preliminarily Approving the Class Action Settlement and Other Related Relief ("Preliminary Approval Motion").  In connection with the Preliminary Approval Motion, Named Plaintiff will submit to the Court, among other things, (a) the Notice attached hereto as Exhibit A, (b) a proposed Order Granting Preliminary Approval, which is attached as Exhibit B; and (c) a proposed Second Amended Complaint (attached hereto as Exhibit F).  The Preliminary Approval Motion will seek approval to file the Second Amended Complaint, as well as ask the Court to set dates for the submission of opt-outs, objections, and a Fairness Hearing.  Named Plaintiff will provide S-L with a draft of the Preliminary

Approval Motion for S-L's review and approval at least five (5) business days before its filing.

**2.4**   **Final Order and Judgement by the Court.**   Named Plaintiff will submit to the Court, with S-L's review and approval, a Motion for Judgment and Final Approval ("Final Approval Motion"), attaching a Proposed Final Order and Judgment in a form attached as Exhibit C, except that the Parties may mutually agree to changes to the Proposed Final Order and Judgment prior to seeking the Court's final approval of the Settlement. The Proposed Final Order and Judgment will, among other things, (a) certify the class and collective for purposes of settlement only, (b) enter judgment in accordance with this Agreement, (c) approve the settlement as fair, adequate, reasonable, and binding on all Qualified Settlement Class Members, (d) dismiss the Action with prejudice, and (e) incorporate the terms of this Settlement and its release of claims. Named Plaintiff will provide S-L with a draft of the motion seeking the Final Order and Judgment for S-L's review and approval at least five (5) business days before its filing.

**2.5**   **Class Notice.**

(a)   Within fourteen (14) calendar days after the Order Granting Preliminary Approval, S-L will provide the Claims Administrator with a list, in electronic form, of the names, last known addresses, and the Applicable Workweeks worked by all Settlement Class Members ("Notice List"). If the 14-day deadline is not practicable, the Parties agree to meet and confer regarding another appropriate deadline. Any and all information, including any Social Security Numbers (if any), provided by S-L shall be held in confidence and shall be used solely for purposes of effectuating this Agreement. The complete Notice List and the data and information contained in the Notice List shall not be disclosed to Named Plaintiff, Class Counsel, any Settlement Class Member, or anyone else external to the Claims Administrator beyond S-L's Counsel without the written consent of S-L.

(b)   Prior to mailing the Notices, the Claims Administrator will update the address for those on the Notice List using the National Change of Address database and other available resources deemed suitable by the Claims Administrator.

(c)   Within twenty-one (21) days of the Order Granting Preliminary Approval, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Notice to all Settlement Class Members. The Claims Administrator shall give the Parties two (2) business days' notice before the Notices are sent out. The Notices shall inform all Settlement Class Members of their rights under this Agreement and of their estimated Individual Settlement Amounts. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Settlement Class Members for whom the Notice is returned by the post office as

undeliverable and shall attempt re-mailings as described below. S-L's Counsel and Class Counsel have the right to make inquiries and receive information from the Claims Administrator, if necessary, for the administration of this Settlement.

(d)     If any Notices are returned as undeliverable, the Claims Administrator shall forward them to any forwarding addresses provided by the U.S. Postal Service. If no such forwarding address is provided, the Claims Administrator shall perform a single skip trace for everyone whose Notice is returned as undeliverable using the Settlement Class Member's Social Security Number (if available) to attempt to obtain the most recent addresses for these Settlement Class Members. The Claims Administrator shall, within ten (10) calendar days after the first mailing of Notice, notify Class Counsel and S-L's Counsel of the precise date of the end of the period to opt-out.

(e)     Within ten (10) days following the filing of the Motion for Preliminary Approval, the Claims Administrator shall serve upon the appropriate state and federal officials a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. A template of the CAFA Notice to the state and federal officials is attached as Exhibit E, and may be modified by S-L as circumstances warrant.

**2.6     Participation in Settlement by Settlement Class Members.**

(a)     Any Settlement Class Member may request exclusion from the Class by "opting out." Settlement Class Members who choose to opt-out of the Class must mail or email a written, signed statement to the Claims Administrator stating that he or she is opting out of the Settlement ("Opt-Out Statement"). The Opt-Out Statement must contain the name, address, and telephone member of the Settlement Class Member to be valid. It must state clearly that the Settlement Class Member wishes to exclude him or herself from the settlement in *Maranzano v. S-L Distribution Company, LLC* in order to be valid. To be effective, such Opt-Out Statements must be postmarked or emailed within forty (40) days from the mailing of the Notice to the Settlement Class Member. The Notice mailed to Settlement Class Members will specify a date certain by which Settlement Class Members must submit any Opt-Out Statement.

(b)     If a Settlement Class Member submits a deficient Opt-Out Statement, the Claims Administrator shall notify the Settlement Class Member of the deficiency within five (5) business days of receipt. The Settlement Class Member shall have fifteen (15) days thereafter to cure said deficiencies, at which point his or her attempted opt-out will be rejected if not received. Settlement Class Members submitting untimely or deficient Opt-Out

8

Statements shall be bound by the Settlement and its release of claims, as provided in Section 3.8.

(c)     Named Plaintiff shall not opt-out of the Settlement.  Named Plaintiff's execution of this Agreement shall signal his agreement to all the terms of the Settlement.

(d)     If a properly completed and executed Opt-Out Statement is not received by the Claims Administrator from a Settlement Class Member and postmarked or emailed on or before the date established in the Notice, then the Settlement Class Member will be deemed to (a) have forever waived his or her right to opt-out of the Settlement Class; (b) be a member of the Settlement Class; and (c) have forever released the Non-FLSA Claims Released by Qualified Settlement Class Member Releasors (as defined in Section 3.8(b)).

(e)     Settlement Class Members who timely submit a valid Opt-Out Statement shall have no further role in the Action, and shall not be regarded as a Qualified Settlement Class Member, and thus they shall not be entitled to any benefit as a result of the Action, this Agreement, and the settlement that it evidences, nor will (1) they have released any claims they may have against the S-L Releasees, or (2) S-L have released any claims against them.

(f)     Qualified Settlement Class Members who cash or deposit their Settlement checks by the date established in Section 3.6(f) shall be deemed to have waived the FLSA Claims Released by Qualified Settlement Class Member Releasors (as defined in Section 3.8(b)) against the S-L Releasees. Qualified Settlement Class Members who do not timely cash or deposit their Settlement Checks will not be deemed to have waived the FLSA Claims Released by Qualified Settlement Class Member Releasors (as defined in Section 3.8(b)) against the S-L Releasees.

(g)     Only Qualified Settlement Class Members who cash or deposit their Settlement checks on or before the date established in Section 3.6(f) shall be entitled to payment pursuant to the Settlement and this Agreement.

**2.7     Objections to Settlement.**

(a)     Qualified Settlement Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be filed with the Court and served upon all counsel of record by no later than forty (40) days after the mailing of the Notice, which applies notwithstanding any argument regarding non-receipt of the Notice.  Anyone who fails to file and serve timely written objections in this manner shall be deemed to have waived any objections and shall be foreclosed from making any objection to the Settlement and from filing any appeal from any final approval order issued by the Court.

(b)     An objector who has filed and served a timely written objection in accordance with Section 2.7(a) also has the right to appear at the Fairness Hearing either in person (or virtually, if permitted by the Court) or through counsel hired by the objector.  An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections.  An objector may withdraw his/her objections at any time.  No objector may appear at the Fairness Hearing unless he/she has filed a timely objection that complies with the procedures provided in Section 2.7(a).  Only Settlement Class Members who are Qualified Settlement Class Members may object to the Settlement.  Any Settlement Class Member who has submitted an Opt-Out Statement may not submit objections to the Settlement.

(c)     The Parties may file with the Court written responses to any filed objections at or prior to the Fairness Hearing.

**2.8**    **Claims Administrator Reporting.**    After issuing the Notices, the Claims Administrator shall provide periodic reports to counsel for the Parties with respect to the number of individuals submitting Opt-Out Statements and objections.

**2.9**    **Final Approval Motion.**  No later than thirty (30) days after close of the Notice period and at least seven (7) calendar days before the Fairness Hearing, the Parties will submit a Final Approval Motion.  The Fairness Hearing shall be held at the Court's convenience.  Named Plaintiff will provide S-L with a draft of the Final Approval Motion for S-L's review and approval at least five (5) business days before its filing.

**2.10**    **Entry of Judgment.**  At the Fairness Hearing, the Parties will request that the Court, *inter alia*, (a) certify the class and collective for purposes of settlement only, (b) enter judgment in accordance with the terms of this Agreement, (c) approve the Settlement as fair, adequate, reasonable, and binding on all Qualified Settlement Class Members, (d) dismiss the Action with prejudice, (e) enter an order permanently enjoining all Qualified Settlement Class Members from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (f) incorporate the terms of this Settlement and its release of claims.

**2.11**    **S-L's Right to Revoke.**  S-L has the right to withdraw from the Settlement at any time prior to the entry of the Final Order and Judgment if:  (a) the terms of this Agreement construed by the Court are materially different from the Parties' Agreement; or (b) Named Plaintiff or Class Counsel materially breaches the Agreement; or (c) more than five percent (5%) of Arbitration Claimants and named plaintiffs in other litigation filed by Class Counsel (i.e., Daveed Charleau, Kevin Marston, Paul Rocco, Belal Safi, and Arnes Vrabac) refuse to accept the terms of their separately negotiated, individual settlements.  If S-L withdraws, it will pay the settlement administration costs through the date of withdrawal.

2.12 **Effect of Revocation or Failure to Grant Final Approval.** In the event S-L revokes the settlement pursuant to Section 2.11, (i) this Agreement shall have no force or effect, other than the non-disclosure provisions in Section 3.12, and the non-admission provisions in Section 3.11; (ii) neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Settlement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iii) the preliminary certification of the Class shall become null and void, and the fact of class certification shall not be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; and (iv) none of the Parties will be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of class action certification or the merits of Named Plaintiff's claims or any other issue.

3. **SETTLEMENT TERMS**

3.1 **Settlement Payment.**

(a) S-L agrees to pay a maximum of One Million Three Hundred Thousand Dollars ($1,300,000.00) (the "Maximum Settlement Amount"), which shall resolve and satisfy all monetary obligations under this Agreement, including all attorneys' fees, litigation costs, Settlement Administration Expenses, payments to Qualified Settlement Class Members, all applicable taxes, interest, and the Service Award. S-L shall not pay more than the Maximum Settlement Amount.

(b) On the next business day following the Court's entry of a Final Order and Judgment, or as soon thereafter as practicable, the Claims Administrator will provide S-L with wiring instructions for the Escrow Account and any applicable tax forms necessary to fund the Escrow Account. No later than fifteen (15) calendar days after the later of the Effective Date or the date on which S-L receives the W-9 and wiring instructions from the Claims Administrator, S-L shall deposit into the Escrow Account the Maximum Settlement Amount minus the amount of Individual Settlement Amounts of any Settlement Class Members who submit a valid Opt-Out Statement. Any interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the Settlement Fund.

(c) Class Counsel and the Claims Administrator will calculate the final amounts due to each Qualified Settlement Class Member as the Individual Settlement Amount and issue checks payable to the Qualified Settlement Class Members. These initial calculations will be completed prior to the mailing of the Notice.

DocuSign Envelope ID: D5CD5EC1-EED2-4AE7-B5F9-5AF731BFAA59

(d)     Within thirty (30) calendar days after the Effective Date, or as soon thereafter as practicable, the Claims Administrator will make the following distributions of money from the Escrow Account:

(i)     Paying Class Counsel Court-approved attorneys' fees and costs as described in Section 3.2, which together shall not exceed one-third (1/3) of the Maximum Settlement Amount;

(ii)     Paying the Claims Administrator as described in Section 2.2;

(iii)     Paying the Service Award as described in Section 3.3;

(iv)     Reserving funds to be available for the Reserve Fund as described in Section 3.5;

(v)     Paying Qualified Settlement Class Members their Final Individual Settlement Amounts as described in Section 3.6, along with the Final Settlement Notice.

(e)     The Parties agree that the Escrow Account is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended (the "Code"), 26 U.S.C. Section 468B and Treas. Reg. §1.468B-1, 26 C.F.R § 1.468B-1, *et seq.*, and will be administered by the Claims Administrator as such.  The Claims Administrator shall apply for an employer identification number ("EIN") for the Escrow Account pursuant to Internal Revenue Service ("IRS") Form SS-4, and in accordance with Treas. Reg. §1.468B-2(k)(4), 26 C.F.R § 1.468B-2(k)(4). With respect to the Escrow Account, the Claims Administrator shall:  (1) satisfy all federal, state and local and income and other tax reporting, return and filing requirements with respect to the Escrow Account; and (2) satisfy out of the Escrow Account all (i) taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the Escrow Account, and (ii) fees, expenses and costs incurred in connection with the opening and administration of the Escrow Account and the performance of its duties and functions as described in this Settlement.  The aforementioned taxes, fees, costs and expenses shall be treated as and included in the costs of administering the Escrow Account.  The Parties and the Claims Administrator shall elect to treat the Settlement Fund as coming into existence as a Qualified Settlement Fund on the earliest date set forth in Treas. Reg. §1.468B-1(j)(2)(i), 26 C.F.R §1.468B-1(j)(2)(i), and that such election statement shall be attached to the appropriate returns as required by Treas. Reg. §1.468B-1(j)(2)(ii), 26 C.F.R §1.468B-1(j)(2)(ii).  The Parties agree to cooperate with the Claims Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section 3.1(e).  The Claims Administrator will agree to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the Escrow Account.  S-L (or

some other person on behalf of S-L) shall supply to the Claims Administrator and to the IRS the statement described in Treas. Reg. §1.468B-3(e)(2), 26 C.F.R §1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which S-L (or some other person on behalf of S-L) makes a transfer to the Escrow Account.

(f)    It is intended that all transfers by S-L to the Escrow Account will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Code, 26 U.S.C. Section 461(h)(1), and Treas. Reg. § 1.461-1(a)(2), 26 C.F.R. § 1.461-1(a)(2).  As such, S-L shall not be taxed on any income of the Escrow Account.

**3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

(a)    Prior to the Fairness Hearing, Class Counsel shall petition the Court for attorneys' fees and costs from the Settlement Fund.  Class Counsel shall provide S-L with a draft of the petition for attorneys' fees at least five (5) business days before filing and will incorporate S-L's reasonable comments.  Class Counsel shall not seek more than one-third (1/3) of the Settlement Fund inclusive of all fees, costs, and expenses.  S-L will not oppose such applications, and further agrees not to object to Class Counsel's billing rates, provided that Class Counsel has abided by the terms of this Agreement.  S-L shall have no additional liability for attorneys' fees and costs relating to the Action, the Settlement, or any claims or theories released by this Settlement.

(b)    Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Action.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Final Approval Motion.  Attorneys' fees and costs sought by Class Counsel but not awarded shall return to the Net Settlement Fund. Class Counsel shall have the right to appeal the Court's determination with respect to their application for attorneys' fees and costs.  In the event Class Counsel appeals a determination of the Court regarding the application for attorneys' fees and costs, such appeal shall not affect the Effective Date.  In such an event, S-L shall deposit into the Escrow Account the amount required under Section 3.1(b), less any un-awarded fees and costs.  The Claims Administrator shall make all distribution required by Section 3.6, aside from the amount sought by Class Counsel.  Any additional administration costs caused by such an appeal shall be borne by Class Counsel.  Attorneys' fees and costs sought by Class Counsel but not awarded shall remain with S-L.

**3.3    Service Award to Named Plaintiff.**  Prior to the Fairness Hearing, Class Counsel will apply to the Court for Named Plaintiff to receive a Service Award from the

Settlement Fund for services rendered to the Settlement Class. The total Service Award to Named Plaintiff will not exceed Twenty Thousand Dollars ($20,000.00). S-L will not oppose such application provided it is made in accordance with the terms of this Agreement. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Final Approval Motion. The amount of a Service Award sought but not awarded shall return to the Net Settlement Fund. Named Plaintiff and Class Counsel agree that they waive any right to appeal changes to the Service Award.

**3.4     Disputed Claims.**  The Claims Administrator shall promptly advise counsel for the Parties of any Settlement Class Member who disputes their allocation based on the settlement formula.  S-L's business records reflecting the dates a Settlement Class Member was a party to an operative Distributor Agreement covered period are presumed to be correct unless that individual submits documents and Class Counsel and S-L's Counsel determines that those documents provide otherwise.  The Parties shall cooperate in good faith to determine whether any Settlement Class Member's allocation based on the settlement formula should be corrected.  The portion of any Settlement Class Member's allocation that is permitted to be increased in accordance with this Section shall be paid from the Reserve Fund.  In no event shall changes to allocations in accordance with this Section result in S-L being required to pay more than the Maximum Settlement Amount.

**3.5     Reserve Fund.**  Seventy-Five Thousand Dollars ($75,000) shall be held by the Claims Administrator and used as a Reserve Fund to make payments to Qualified Settlement Class Members whose allocation is increased, pursuant to Section 3.4. The money in the Reserve Fund shall remain available to pay such amounts until one hundred twenty (120) days after the Effective Date.

**3.6     Distribution to Qualified Settlement Class Members.**

(a)     Each Qualified Settlement Class Member's Individual Settlement Amount from the Net Settlement Fund will be determined as follows:

[Net Settlement Fund] *multiplied by* [(Applicable Workweeks attributable to the individual Qualified Settlement Class Member) *divided by* (total combined Applicable Workweeks attributable to all Qualified Settlement Class Members)].

The formula may also provide reduced Individual Settlement Amounts for Qualified Settlement Class Members who have previously executed releases of claims against S-L, as long as such reductions are uniformly applied to all Qualified Settlement Class Members who are alleged to have signed such a release.  The amount of any reduction will be agreed to by Class Counsel and Counsel for S-L prior to distribution of the Notice.

(b)     A Qualified Settlement Class Member's Final Individual Settlement Amount shall be their Individual Settlement Amount subject to any adjustments under Section 3.4.

(c)     Any funds in the Net Settlement Fund that are not timely claimed by Qualified Settlement Class Members shall be considered Unclaimed Funds.

(d)     The allocation of amounts for Qualified Settlement Class Members shall be kept strictly confidential by the Claims Administrator and will not be disclosed to anyone beyond Class Counsel and S-L's Counsel except as is necessary to the administration of the Settlement. To the extent the allocation amount tendered to any Qualified Settlement Class Member or for any settlement check must be filed with the Court, the information will be filed under seal at S-L's option. However, nothing in this paragraph shall prohibit Class Counsel from informing the Court of the actual Individual Settlement Amounts to be distributed to class members, so long as the recipient of each amount is not identified.

(e)     S-L and the Claims Administrator shall exchange such information as is necessary and reasonably available for the Claims Administrator to comply with tax reporting obligations as described in Section 3.7.

(f)     Qualified Settlement Class Members will have one hundred twenty (120) calendar days after the date of the initial mailing to cash or deposit their settlement payments. Forty-five (45) days after the initial mailing, Class Counsel shall contact any Qualified Settlement Class Member who has not negotiated his or her settlement payment at their last known telephone number and email address to ensure that the check was received and remind them of the void date of the check. If Settlement Class Members do not cash or deposit their settlement checks within the one hundred twenty (120) day period, their settlement checks (the "Unclaimed Checks") will be void and a stop-payment will be placed. In such event, the amounts associated with the Unclaimed Checks will be considered Unclaimed Funds. Qualified Settlement Class Members who do not cash or deposit their settlement checks shall remain bound by this Settlement and its release of claims, to the extent provided in Section 3.8(b). This Agreement and the associated Final Order and Judgment do not and will not create any unpaid residue or unpaid residual with respect to the Unclaimed Checks or Unclaimed Funds, and no distribution of such to any Settlement Class Member shall be required. The provisions of any unclaimed property statute or law do not apply to this action or this Agreement. The outcome of any proceeding related to the distribution of amounts associated with Unclaimed Checks shall not terminate this Agreement or otherwise affect the Court's ruling on the Final Approval Motion. All payments to Settlement Class Members made pursuant to this Agreement shall be deemed to be paid to such

Settlement Class Members solely in the year in which such payments actually are received by the Settlement Class Members.

**3.7** **Taxability of Settlement Payments.**

(a) For tax purposes, the payments to Named Plaintiff and Qualified Settlement Class Members pursuant to Section 3.6 shall be allocated as follows: non-wages, liquidated damages, and interest (100% of each settlement payment). Named Plaintiff and Qualified Settlement Class Members will be exclusively responsible for their own portion of any tax liability associated with their settlement payment. The Claims Administrator shall be responsible for making all reporting, deposits, and withholdings (if any) with respect to all amounts payable to Settlement Class Members required pursuant to any federal, state, or local tax law or regulation under the EIN of the Escrow Account or S-L, as required by applicable law.

(b) Within thirty (30) calendar days following the Effective Date, Class Counsel shall provide the Claims Administrator with a duly completed IRS Form W-9. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be reported by the Claims Administrator on the applicable IRS Form 1099 as required by the IRS Code and shall be made without withholding, provided the Claims Administrator has timely received a duly completed Form W-9 from Class Counsel.

(c) Named Plaintiff and Qualified Settlement Class Members agree to indemnify and hold harmless S-L and S-L Releasees for any taxes, penalties, interest or other amounts due or owing by Named Plaintiff and Qualified Settlement Class Members on such payments. S-L and the Claims Administrator will not make from the payment to Named Plaintiff or Qualified Settlement Class Members any deductions, withholdings, or additional payments, including without limitation, FICA tax, any federal and/or state unemployment tax, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings, and entry of the Final Order and Judgment by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments. Any amount paid to Named Plaintiff or Qualified Settlement Class Members shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, pension, or other compensation or benefit plan provided by S-L.

(d) Named Plaintiff and each Qualified Settlement Class Member will be solely responsible for all taxes, interest, penalties, or other amounts due with respect to any payment received pursuant to this Agreement. Named Plaintiff, on behalf of the Qualified Settlement Class Members, acknowledges and agrees that he has not relied upon any advice from S-L as to the taxability of the payments received pursuant to this Agreement.

16

(e)    The Claims Administrator shall handle all tax reporting with respect to the payments being made pursuant to this Agreement, and shall report the payments in accordance with applicable law.

**3.8    Release.**

(a)    **General Release of Claims by Named Plaintiff.**  To the maximum extent permitted by law, Named Plaintiff, on behalf of himself and any owners, employees, helpers, representatives, agents, and spouse or family members engaged in his business or contracting with S-L, and their businesses (the "Maranzano Releasors"), hereby releases, remises, and forever discharges the S-L Releasees from all claims that were or could have been raised in this Action, including but not limited to all wage and hour and wage payment claims, including claims under the Fair Labor Standards Act ("FLSA"), the NJWPL, the NJWHL, and all other federal, state, or local wage and hour laws and wage payment laws (including but not limited to laws or regulations related to alleged misclassification as independent contractors, overtime, straight time wages, meal and rest breaks, wage statements, wage notice, minimum wage, expense reimbursement, and allegedly unlawful deductions), related common law theories (including but not limited to claims for breach of contract and unjust enrichment), including all liquidated damages, civil penalties, equitable relief, fees, costs, or other damages/relief, as well as any other employment-related claims, including but not limited to claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974 (ERISA), the Equal Pay Act, the Family and Medical Leave Act, Section 1981 of the U.S. Code, the National Labor Relations Act, the Sarbanes-Oxley Act of 2002, and any other similar state and local employment laws, which Named Plaintiff did assert or could have asserted in the Action, or which the Maranzano Releasors ever had against the S-L Releasees at any time through the Release Date (the "Claims Released by Maranzano Releasors").

In the event Named Plaintiff asserts a claim or otherwise participates in an action brought under the FLSA or state wage and hour or wage payment laws in violation of this Section 3.8(a) and/or 3.8(f), Named Plaintiff agrees to pay back to S-L 50% of his individual settlement amount (including any Service Award the Court may award), in addition to all other remedies available to S-L under this Agreement or applicable law.  Named Plaintiff acknowledges and agrees that he may discover facts in addition to, or distinct from, those facts that he knows or believes to be true at the time of execution of this Agreement, but nonetheless, Named Plaintiff acknowledges and agrees that his intention is to finally and forever settle and release all of the Claims Released by Maranzano Releasors against the S-L Releasees, notwithstanding any prospective or undiscovered claims he may have arising through the Release Date.  Named Plaintiff also agrees to hold harmless the S-L Releasees from all claims, demands, obligations,

actions, causes of action, suits, debts, damages, interest, costs, taxes and expenses of whatever kind and nature, including, but not limited to, attorneys' fees, arising out of, on account of, or relating to: (i) the Claims Released by Maranzano Releasors; and/or (ii) any representation or warranty made by Named Plaintiff in this Agreement.

Named Plaintiff does not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), subject to the condition that he agrees not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom.

Named Plaintiff agrees and acknowledges that he has had the opportunity to seek the advice of counsel, and that this is a knowing and voluntary waiver. Named Plaintiff shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he may otherwise have had relating to the claims identified in this Section.

Named Plaintiff further agrees and acknowledges that he has not made any claims or allegations related to sexual harassment or sexual abuse, and none of the payments to him as set forth in this Agreement are related to allegations of sexual harassment or sexual abuse.

Class Counsel has clearly explained the terms of this General Release of Claims to Named Plaintiff.

(b)     **Release of Claims by All Other Qualified Settlement Class Members.** Upon the entry of the Final Order and Judgment, each Qualified Settlement Class Member, on his or her behalf, and on behalf of any owners, employees, helpers, representatives, agents, and spouses or family members engaged in their business or contracting with S-L, and their businesses (the "Qualified Settlement Class Member Releasors"), shall fully release and discharge S-L Releasees from all claims that were or could have been raised in the Action, including but not limited to all wage and hour and wage payment claims, including claims under the NJWPL and NJWHL, and all other state and local wage and hour laws and wage payment laws (including but not limited to laws or regulations related to alleged misclassification as independent contractors, overtime, straight time wages, meal and rest breaks, wage statements, wage notice, minimum wage, expense reimbursement, and allegedly unlawful deductions), and related common law theories, including all liquidated damages, civil penalties, equitable relief, fees, costs, or other damages and relief that accrued on or before the Release Date (the "Non-FLSA Claims Released by Qualified Settlement Class Member Releasors"). Qualified Settlement Class Members who do not cash or deposit their settlement checks shall remain bound by this Settlement and shall be deemed to have released the Non-FLSA Claims Released by Qualified Settlement Class Member Releasors.

18

In addition, any Qualified Settlement Class Member who (1) cashes or deposits a settlement check, or (2) makes a claim for settlement funds with a state's unclaimed property fund and receives payment therefrom shall fully release and discharge S-L and the S-L Releasees from any and all FLSA claims through the Release Date, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime compensation, and/or failure to pay for all hours worked (the "FLSA Claims Released by Qualified Settlement Class Member Releasors").  By cashing or depositing a settlement check, a Qualified Settlement Class Member shall be deemed to have "opted-in" to the FLSA collective action asserted in the Complaint.  Qualified Settlement Class Members who do not cash  or deposit their settlement checks will not be deemed to have released the FLSA Claims Released by Qualified Settlement Class Member Releasors.

This Settlement is intended to include in its effect all claims identified in this Section 3.8(b), including wage and hour claims that each Qualified Settlement Class Member does not know or suspect to exist in his or her favor against S-L Releasees as of the Release Date.  Qualified Settlement Class Members agree and acknowledge that they have had the opportunity to seek the advice of counsel, and that this is a knowing and voluntary waiver.  Settlement Class Members shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may have otherwise had relating to the claims identified in this Section 3.8(b).

(c)    **Release of Claims by S-L.**  Except as set forth below, upon the entry of the Final Order and Judgment, S-L, on behalf of itself and its past, present and future representatives, directors, officers, employees, shareholders, members, parent companies, subsidiaries, affiliates, agents, predecessors, successors, assigns, attorneys and insurers (hereinafter collectively the "S-L Releasors"), shall fully release and discharge Named Plaintiff and Qualified Settlement Class Member Releasees from any and all counterclaims and third-party claims that were asserted in the Action or that could have been pled based on the facts alleged therein ("Claims Released by the S-L Releasors").  S-L shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits it may have otherwise had relating to the claims identified in this paragraph.

Notwithstanding the foregoing, if a Qualified Settlement Class Member who does not cash or deposit his or her  Settlement check later brings or pursues an FLSA claim against an S-L Releasor that would have been released pursuant to Section 3.8(b) had the Qualified Settlement Class Member cashed or deposited the Settlement check, the release as described in this Section 3.8(c) shall be null and void, and the S-L Releasees shall be permitted to assert any defenses, claims, or counterclaims they otherwise would have had against that individual notwithstanding this Agreement.

(d)     **Certain Claims Not Released by This Agreement.**   For any Qualified Settlement Class Member who operated a distributorship pursuant to a Distributor Agreement with S-L as of the Release Date, the following claims are excluded from the FLSA and Non-FLSA Claims Released by Qualified Settlement Class Member Releasors, as well as the Claims Released by the S-L Releasors:  (i) claims related to payments owed by S-L to the Qualified Settlement Class Members and/or his corporate entity and payments owed by the Qualified Settlement Class Member and/or his corporate entity to S-L under settlement statements, including but not limited to, payments for balances owed, purchases, sales credit and other charges or credits; (ii) claims by S-L against a Qualified Settlement Class Member and/or his corporate entity that relate to or arise from third-party complaints brought against S-L; and (iii) claims arising after the Release Date.

(e)     Nothing in this Release shall prohibit or restrict Named Plaintiff, Qualified Settlement Class Members, S-L Releasees, or Qualified Settlement Class Member Releasees, from: (i) providing information to or cooperating with Congress, the Securities and Exchange Commission ("SEC"), the Commodity Futures Trading Commission ("CFTC"), the Consumer Financial Protection Bureau ("CFPB"), the EEOC, the Occupational Safety and Health Administration ("OSHA"), the National Labor Relations Board ("NLRB"),  Department of Justice ("DOJ") or any other federal, state, or local government, regulatory, or law enforcement agency ("Government Agencies"), the Financial Industry Regulatory Authority ("FINRA") or the "New York Stock Exchange, Inc. ("NYSE"), or any other self-regulatory organization ("SRO"); (ii) reporting to any of the S-L Releasees' management or directors regarding conduct the individual believes to be in violation of the law or prohibits or restricts the individual from providing information to or cooperating with any Government Agencies or any SROs; (iii) communicating with any Government Agencies or SRO or otherwise participating in any investigation or proceeding that may be conducted by any Government Agency or SRO, including providing documents or other information; or (iv) receiving an award for information provided to any Government Agencies other than for charges filed with the EEOC or corresponding state or local agency as set forth above.  Named Plaintiff and Qualified Settlement Class Members may also disclose confidential information, including trade secrets, to (a) any government, regulatory or self-regulatory agency, including under Section 21F of the Securities and Exchange Act of 1934, Section 23 of the Commodity Exchange Act of 1936, or Section 7 of the Defend Trade Secrets Act of 2016 ("Defend Trade Secrets Act") and the rules thereunder, or (b) an attorney in connection with the reporting or investigation of a suspected violation of law or to an attorney or in a court filing under seal in connection with a retaliation or other lawsuit or proceeding, as permitted under the Defend Trade Secrets Act.  Named Plaintiff and Qualified Settlement Class Members do not need the prior authorization of S-L to make these disclosures or provide evidence

or other information to any government, regulatory, or self-regulatory agency, and Named Plaintiff and Settlement Class Members are not required to notify S-L that they have done so.

(f)     Named Plaintiff and Qualified Settlement Class Members further covenant that they will not participate in any other legal actions against S-L for claims released by this Settlement, and will not opt-in, will withdraw any opt-in, will dismiss the action or themselves from any such actions where they are a claimant, plaintiff or appellant, and will opt-out of those actions if they become aware of such actions.

(g)     **Release of Fees and Costs for Settled Matters.**  Class Counsel and Named Plaintiff, on behalf of the Qualified Settlement Class Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against S-L or S-L Releasees for attorneys' fees or costs associated with Class Counsel's representation of Named Plaintiff and the Settlement Class Members in the Action, the Settlement, or any claims being released by this Agreement and related papers.  Class Counsel further understand and agree that any fee payments approved by the Court will be the full, final, and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals in the Action.

**3.9     Future Inquiries.**  It is the Parties' desire that this Agreement is the final resolution of any disputes that were or could have been included in this Action.  To the extent, consistent with Class Counsel's legal and ethical obligations, anyone operating (or anyone that previously operated) a S-L distributorship who is not a Settlement Class Member or pursuing claims against S-L or any S-L Releasee in a different forum but later contacts Class Counsel expressing interest in pursuing claims that were or could have been raised in this Action, Class Counsel will present that individual(s) to S-L Releasees for settlement consistent with the terms of this Agreement before filing any individual, class, or collective claims.  Class Counsel represents that other than Named Plaintiff, the Settlement Class Members, the Arbitration Claimants, the named plaintiffs in *Mode v. S-L Distribution Company LLC, et al.* (No. 18-cv-150 (W.D.N.C.)), *Marston v. S-L Distribution Company, LLC* (No. 1:19-cv-02187-JPW (M.D. Pa.)), *Vrabac v. S-L Distribution Company, LLC* (1:20-cv-00937-JPW (M.D. Pa.)), and *Charleau v. S-L Distribution Company, LLC* (No. 1:20-cv-00879-JPW (M.D. Pa.)), the FLSA collective members in *Mode v. S-L Distribution Company LLC, et al.* (No. 18-cv-150 (W.D.N.C.)), and anyone presented to S-L's Counsel consistent with this Agreement, Class Counsel does not have any other current clients who have actual or potential claims against any of the S-L Releasees. Additionally, Class Counsel is not aware of any other individuals who operate or operated a S-L distributorship contemplating claims against any of the S-L Releasees.  Nothing in this Section 3.9 shall be construed to require S-L or any S-L Releasee to reach a settlement or engage in settlement negotiations with any individual or entity that is presented to S-L's Counsel.

3.10  **No Assignment.**  Class Counsel and Named Plaintiff, on behalf of the Settlement Class, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

3.11  **Non-Admission.**  Nothing relating to this Agreement, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by S-L or S-L Releasees of any liability, culpability, negligence, or wrongdoing toward Named Plaintiff, the Settlement Class Members, or any other person, and S-L and S-L Releasees specifically disclaim (i) any liability, culpability, negligence, or wrongdoing toward Named Plaintiff, Settlement Class Members, or any other person; (ii) that class or collective action certification is appropriate in this or any other matter; or (iii) that S-L is an employer or joint employer of Named Plaintiff, Settlement Class Members, or anyone they seek or sought to represent in the Action or otherwise.  Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and uncertainty.  This Agreement, and any communications, papers, or orders related to the Settlement, may not be cited to, used, or admitted as evidence (i) of liability; (ii) that class or collective action certification is appropriate; or (iii) that S-L is an employer or joint employer of anyone.  There has been no determination by any court as to (i) the merits of the claims asserted by Named Plaintiff against S-L, or (ii) whether S-L is an employer or joint employer of anyone, including Named Plaintiff or Settlement Class Members.

3.12  **Non-Disclosure/Non-Disparagement.**  Except as necessary to effectuate the Settlement of this Action, Named Plaintiff and Class Counsel agree not to disclose to individuals other than immediate family, tax preparers, accountants, financial advisors, and attorneys the terms of this Settlement or the negotiations leading thereto except in court papers or if required by legal process or protected by law, and to the extent information regarding this Settlement or the negotiations is disclosed to such individuals, Named Plaintiff and Class Counsel will require them to adhere to the confidentiality provisions of this Settlement and the obligation to keep the information confidential prior to doing so.  Neither Named Plaintiff nor Class Counsel shall, directly or indirectly, issue or cause to be issued any statements to the media or engage in any other publicity regarding the Agreement or the Settlement, nor shall they issue any notice of the Settlement to anyone else except for the notice issued through the Claims Administrator as set forth in this Agreement.

Neither Named Plaintiff nor Class Counsel, directly or indirectly, shall issue a press release, hold a press conference, publish information about the settlement or the settlement negotiations on any social media application, email correspondence, website or otherwise publicize the settlement or negotiations.  Named Plaintiff and Class Counsel agree not to respond to any press inquiries concerning the Settlement except to refer reporters to the papers filed with this Court.  Named Plaintiff and

Class Counsel further agree not to make disparaging comments relating to S-L or any S-L Releasees.

3.13 **Non-Interference With Settlement.** Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Order and Judgment, Named Plaintiff and anyone acting on behalf of him or his business entities, Settlement Class Members, and Class Counsel shall be barred and enjoined from: (a) further prosecution of the litigation; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate in a class or collective action, or any other claim or proceeding against S-L in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

3.14 **Jurisdiction.** The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement and all Qualified Settlement Class Members submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement.

3.15 **Return and/or Destruction of Confidential and Settlement Materials.** Named Plaintiff and Class Counsel agree to return and/or destroy all documents and materials designated as "Confidential" pursuant to the Parties' Protective Order in the Action (Dkt. 51) or produced to them in connection with settlement negotiations in the Action.

3.16 **Miscellaneous.**

(a) **Cooperation Between the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(b) **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(c) **Binding Effect.** This Agreement shall be binding upon the Parties and Class Counsel, and, with respect to Named Plaintiff and Qualified Settlement Class Members, their representatives, business entities, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

(d) **Severability.** Should any clause, sentence, provision, paragraph, or part of this Agreement be adjudged by any court of competent jurisdiction, or be

held by any other competent governmental authority having jurisdiction, to be illegal, invalid, or unenforceable, such judgment or holding shall not affect, impair, or invalidate the remainder of this Agreement, but shall be confined in its operation to the clause, sentence, provision, paragraph, or part of the Agreement directly involved, and the remainder of the Agreement shall remain in full force and effect.

(e)     **Arm's-Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arm's-length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

(f)     **Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(g)     **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(h)     **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of North Carolina, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(i)     **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's final approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of Named Plaintiff, S-L, and Class Counsel and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(j)     **When Agreement Becomes Effective.**  Except for provisions of this Agreement requiring any party to act or seek Court action prior to Court approval, as well as those provisions set forth in Sections 2.11, 2.12, 3.9, 3.10, 3.11, 3.12, 3.13, and 3.14, which are intended to be binding on the

DocuSign Envelope ID: D5CD5EC1-EED2-4AE7-B5F9-5AF731BDAA59

Parties upon mutual execution hereof, this Agreement shall become fully effective upon the Effective Date.

(k)     **Facsimile/Electronic Signatures.**  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

(l)     **Extensions of Time.**  If any deadlines related to this Settlement cannot be met, Class Counsel and S-L's Counsel shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement.  In the event that the Parties fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Agreement.

(m)     **Counterparts.** The Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

(n)     **Third-Party Beneficiaries.**  The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto; but this Agreement is not designed to and does not create any third party beneficiaries other than third parties that are identified as S-L Releasees (as defined in Section 1.33) and Qualified Settlement Class Member Releasees (as defined in Section 1.23).

*Remainder of Page Intentionally Left Blank*

**NAMED PLAINTIFF:**

DATED: _2/11/2022_____, 2022

By: _____

Benjamin Maranzano

**SNYDER'S-LANCE, INC.**

DATED: _2/14/2022_____, 2022

By: _____

On Behalf of Snyder's-Lance, Inc.

**CLASS COUNSEL:**

WINEBRAKE & SANTILLO, LLC

DATED: _2/11/2022_____, 2022

By: _____

LICHTEN & LISS-RIORDAN, P.C.

DATED: _2/14/2022_____, 2022

By: _____

# EXHIBIT A

# NOTICE OF PROPOSED SETTLEMENT

## NOTICE OF PROPOSED SETTLEMENT

### *Maranzano v. S-L Distribution Company, LLC*
### Case No. 1:19-cv-01997 (M.D. Pa.)

**TO:**   «First_Name» «Last_Name»

**YOU ARE COVERED BY THE SETTLEMENT OF A CLASS AND COLLECTIVE ACTION LAWSUIT.**

**A FEDERAL JUDGE AUTHORIZED THIS NOTICE, WHICH SUMMARIZES THE TERMS OF THE SETTLEMENT AND EXPLAINS YOUR RIGHTS UNDER THE SETTLEMENT.**

**PLEASE READ THIS DOCUMENT CAREFULLY AS IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR LEGAL RIGHTS.**

| 1.      Who is covered by the settlement? |
|---|

The United States District Court in Harrisburg, PA ("the Court") presides over this lawsuit, which was filed in November 2019.  The lawsuit was filed by a current distributor of S-L Distribution Company, LLC ("S-L") alleging that S-L improperly classified its distributors in New Jersey and, as a result, alleges, among other things, that distributors were not paid required wages, had improper deductions taken from their pay, and were not reimbursed for business and other expenses as required by law.

Plaintiff has been pursuing this lawsuit as a "class action" on behalf of himself and 82 other individuals who, since November 2013, worked in New Jersey as a distributor pursuant to a Distributor Agreement with S-L.

The 83 people described above who have not signed an alternative dispute resolution agreement with S-L are called "Class Members."  **You are a Class Member.**

Because the lawsuit has been settled, you are entitled to a settlement payment if the Court ultimately approves the settlement as fair and reasonable.  Your individual settlement payment amount is described in Section 4.

1

Please continue reading to learn more about the lawsuit, the settlement, and your options.  Your legal rights are affected whether you act or do not act.

| 2. | Why is there a settlement? |
|---|---|

The Court has not decided who will win the lawsuit.  So *all* parties run the risk of losing.

***The settlement is a compromise***.  It allows both sides to avoid the costs, delays, and risks of further litigation and provides money to Plaintiff and other Class Members.

In reaching this settlement, S-L denies that it violated any laws, and continues to assert that its business practices were and are entirely legal.

| 3. | What are my options under the settlement? |
|---|---|

| YOUR LEGAL RIGHTS AND OPTIONS ARE AS FOLLOWS: | |
|---|---|
| **DO NOTHING AND GET PAID** | **Receive a settlement payment.**<br><br>By doing nothing, and if the Court approves the settlement, you will receive a check for your share of the settlement and you will release (i.e., can no longer sue) S-L from the legal claims described in Section 9 below. Upon cashing or depositing your settlement check, you will also release any claims you may have against S-L under the Fair Labor Standards Act and S-L will also release certain claims against you and/or your business entity, as described in Section 9 below. |
| **OPT-OUT** | **Do not receive a settlement payment.**<br><br>If you opt-out or exclude yourself from the settlement, you will not receive a settlement check.  You will keep any rights you may have to sue S-L separately about the same legal claims asserted in this proceeding.  S-L will not release any claims against you and/or your business entity. |

| OBJECT | You may write to the Court about why you object to the settlement. If you choose to opt out of the settlement (as discussed in Section 6 below), however, you cannot object to the settlement. More information about objecting is set forth in Section 7 below. |
|---|---|

These rights and options – **and the deadlines to exercise them** – are explained in this notice. If you do not want to be a part of this action, you must act before **[DATE]**.

## 4.    How much money will I receive under the settlement?

The Court will decide whether the settlement should be approved as fair and reasonable. If the Court approves the settlement, S-L will make a maximum total settlement payment of $1,300,000. If the Court approves the requested legal fees, Service Award, and Claims Administrator costs, a total of $835,667 will be available to the 83 Class Members.

The $835,667 will be distributed to each Class Member based on the number of weeks he or she worked as a distributor pursuant to a Distributor Agreement with S-L between November 20, 2013 and October 20, 2021. Each week has a value of $62.42 for those Class Members who have not previously executed a release of claims against S-L, and $31.21 for Class Members who have previously signed release documents. In this settlement, Class Members are ***not*** able to receive money for any weeks in which they worked as a distributor pursuant to a Distributor Agreement with S-L prior to November 20, 2013. This is because of the statute of limitations associated with the legal claims asserted in this lawsuit.

It has been determined that you, **«First_Name» «Last_Name»,** have **«Number_of_Weeks»** weeks worked as a distributor pursuant to a Distributor Agreement with S-L between November 20, 2013 and October 20, 2021, that may be counted for purposes of calculating your settlement payment. Thus, you are entitled to a settlement payment of ***$«Settlement_Payment»*** (**«Number_of_Weeks»** weeks X $_____).

Your settlement payment represents income. So you will receive an IRS 1099 Form reflecting your payment, and you will be personally responsible for reporting your settlement payment on your tax returns, as well as reimbursing S-L if it is required to pay any taxes, interest, or penalties on such payments. Please consult your tax advisor or accountant regarding the taxability of this settlement payment. Class

Counsel and S-L's Counsel make no representations regarding the taxability of your settlement payment.

Please remember that the above settlement payment will be made *only if* the Court approves the settlement as fair and reasonable.

If you have any questions about the determination of your payment amount, please call one of the law firms listed in Section 13.

| | |
|---|---|
| **5.** | **How can I receive a settlement payment?** |

If this Notice is addressed to you, then you are covered by the settlement and do not need to do anything to receive a settlement payment.

However, if this Notice was forwarded to you from a prior mailing address, you should call one of the law firms listed in Section 13 so that your mailing address can be updated.

| | |
|---|---|
| **6.** | **How can I opt-out of the settlement?** |

If you do not want to participate in the settlement, then you must take steps to exclude yourself.

To exclude yourself, you must prepare a note or letter simply stating: "I wish to be excluded from the settlement in the matter of *Maranzano v. S-L Distribution Company, LLC.*" The letter or note may be typed or handwritten. Be sure to include your signature, printed full name, address, and phone number. To be valid, your exclusion request must be postmarked or emailed no later than **[DATE]** and must be mailed or emailed to the Claims Administrator at the following address:

**[insert address]**
**[insert phone number]**
**[insert email address]**

If you exclude yourself from the settlement, you will not receive any money payment, you will not be legally bound by the settlement, you will not waive or release any legal claims against the S-L, and S-L will not waive or release any legal claims against you and/or your business entity.

| **7.** | **What if I have an objection to the settlement?** |
|---|---|

If you have not opted out of the settlement, you can object to the settlement if you believe it is unfair or should not be approved.  The Court will consider your views.  You are not required to submit an objection.

To object to the settlement, you must send a letter to the Claims Administrator by **[DATE]** saying that you object to the settlement.  Written objections must contain your name and address and must be signed by you, and must include reference to the matter of ***Maranzano v. S-L Distribution Company, LLC***.  If you opt-out of the settlement, you cannot object to the settlement.

To be valid, your objection must also be postmarked or emailed no later than **[DATE]** and must be mailed or emailed to the Claims Administrator at:

**[insert address]**
**[insert phone number]**
**[insert email address]**

If you object to the settlement, you have the right to appear in person (or virtually, subject to the Court's policies) at the Fairness Hearing (explained in Section 14 below), but you are not required to do so in order to have your objections considered by the Court.  If you wish to appear at the Fairness Hearing, you must state your intention to do so in your letter to the Claims Administrator.

| **8.** | **What's the difference between opting out and objecting?** |
|---|---|

Objecting is telling the Court that you do not like something about the settlement and asking the Court not to approve the settlement.  You can object only if you remain a class member.  Opting out is telling the Court that you do not want to be part of the settlement.  If you submit both an objection and a statement requesting to opt out of the Settlement, the Claims Administrator will attempt to contact you to determine whether you intended to object or opt-out.

| **9.** | **What claims am I releasing by participating in the settlement?** |
|---|---|

If you do not exclude yourself from the settlement by following the procedures in Section 6 above, and the settlement is approved, you, on behalf of yourself and on behalf of any owners, employees, helpers, representatives, agents, and spouses or family members engaged in your business or contracting with S-L, and their

businesses, will fully release and discharge S-L and their present, former and future affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present, former, and future officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with them (collectively, "S-L Releasees") from:

- All claims that were or could have been raised in the lawsuit identified above, including but not limited to all wage and hour and wage payment claims, including claims under the New Jersey Wage Payment Law and New Jersey Wage and Hour Law, and all other state and local wage and hour laws and wage payment laws (including but not limited to laws or regulations related to alleged misclassification as independent contractors, overtime, straight time wages, meal and rest breaks, wage statements, wage notice, minimum wage, expense reimbursement, and allegedly unlawful deductions), and related common law theories, including all liquidated damages, civil penalties, equitable relief, fees, costs, or other damages and relief that accrued on or before January 15, 2022 (the "Released Claims").

In addition, if you also cash or deposit your forthcoming settlement check, you will be deemed to have further waived, released, and forever discharged S-L and the S-L Releasees from any and all Fair Labor Standards Act ("FLSA") claims through January 15, 2022, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime compensation, and/or failure to pay for all hours worked (the "Released FLSA Claims"). By cashing or depositing your settlement check, you will be deemed to have "opted-in" to the FLSA collective action asserted in the Complaint.

In addition, if you do not opt-out of the settlement and cash or deposit your settlement check, you will be barred and enjoined from: bringing in the future any claim or cause of action released in the preceding paragraphs. You acknowledge that you are releasing all Released Claims and Released FLSA Claims, including claims that you do not know or suspect to exist in your favor against the S-L Releasees at the time of the release.

If you do not opt-out, you will also be agreeing and acknowledging that this is a knowing and voluntary waiver of the Released Claims and Released FLSA Claims.

You shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits you may otherwise have had relating to the claims identified and released above.

If you do not opt-out, you will also be barred from participating in any other legal actions against the S-L Releasees for the claims released by this settlement, and will not opt-into, will withdraw any opt-in form, will dismiss the action or yourself from the actions where you are a claimant, plaintiff, or appellant, and will opt-out of those actions if you become aware of such actions.

This release of claims may be raised as a complete defense to and will preclude and bar any action or proceeding that is encompassed by this Release.  If you have questions about the Release, you should contact Class Counsel (*see* Section 13 below).

| 10. | What claims is S-L releasing as part of this settlement? |
|-----|----------------------------------------------------------|

Upon the entry of the Final Order and Judgment, if you are a Settlement Class Member who (1) does not opt-out of this settlement and (2) cashes or deposits the settlement check, S-L, on behalf of itself and its past, present and future representatives, directors, officers, employees, shareholders, members, parent companies, subsidiaries, affiliates, agents, predecessors, successors, assigns, attorneys and insurers (collectively, the "S-L Releasors"), will fully release and discharge you and your business entity (if any) from:

- any and all counterclaims and third-party claims that were asserted in the lawsuit identified above or that could have been pled based on the facts alleged therein ("Claims Released by the S-L Releasors").

| 11. | What claims are not being released as part of this settlement? |
|-----|----------------------------------------------------------------|

Upon the entry of the Final Order and Judgment, and if you are both (1) a Settlement Class Member that does not opt-out of this settlement, and (2) you operated a distributorship pursuant to a Distributor Agreement with S-L as of January 15, 2022, the following claims are excluded from the Released Claims and Claims Released by the S-L Releasors (defined above):

(i) Claims related to payments owed by S-L to you and/or your corporate entity and payments owed by you and/or your corporate entity to S-L under settlement statements, including but not limited to, payments for balances

owed, purchases, sales credit and other charges or credits; (ii) claims by S-L against you and/or your corporate entity that relate to or arise from third-party complaints brought against S-L; and (iii) claims arising after January 15, 2022.

| 12. | When will I get my payment? |
|-----|-----|

Settlement Checks will be issued once the Court approves the settlement and all appeals have expired.  Please be patient.

| 13. | Do I have a lawyer in this case and how will they be paid? |
|-----|-----|

Plaintiff and other individuals who do not exclude themselves from the settlement are represented by the following law firms ("Class Counsel"): (i) **Lichten & Liss-Riordan, P.C.**, 729 Boylston Street, Suite 2000, Boston, MA  02116; Phone **(617) 994-5800**; and (ii) **Winebrake & Santillo, LLC**, 715 Twining Road, Suite 211, Dresher, PA 19025; Phone **(215) 884-2491**.  Lawyers from these firms will answer your questions about the lawsuit and settlement free of charge and in strict confidence.  If you call, please identify yourself as a "Class Member" in the "S-L New Jersey Wage Lawsuit" and ask to speak with one of the assigned lawyers.

You will **_not_** pay any legal fees or expenses out of your individual settlement payment described in Section 4.  Rather, the above firms will ask the Court to approve legal fees of $433,333, which is one-third of the total $1,300,000 settlement fund.  The Court has not yet decided whether it will approve the requested fees and expenses.

In addition, the above lawyers will ask the Court to approve an extra "service award" payment of $20,000 to the lead Plaintiff who started this Action.  The Court has not yet decided whether it will approve the requested service award.

| 14. | When is the Fairness Hearing? |
|-----|-----|

The Court will hold a hearing to determine whether to approve the settlement.  You are not required or expected to attend that hearing.  The lawyers identified in Section 13 will attend the hearing and answer any questions that the Court may have.

The hearing will be held on **[DATE]** at **[TIME]** at the **[COURTHOUSE NAME AND ADDRESS]** (the "Fairness Hearing").

| 15. | What if I have questions or want to examine court records? |
|---|---|

This Notice summarizes the most important aspects of the proposed settlement. You can obtain further information by calling the law firms listed in Section 13.

**Please do not contact the Court.**

# EXHIBIT B

# PRELIMINARY APPROVAL ORDER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BENJAMIN MARANZANO, *on behalf of himself and all others similarly situated*,

          Plaintiff and
          Counterclaim-Defendant,

      v.

S-L DISTRIBUTION COMPANY, LLC,

          Defendant and
          Counterclaimant.

Case No. No. 1:19-cv-01997

Hon. Jennifer P. Wilson

S-L DISTRIBUTION COMPANY, LLC,

          Third-Party Complainant,

      v.

BENJAMIN MARANZANO, LLC,

          Third-Party Defendant.

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL

**AND NOW**, this ___ day of _____, 2022, upon consideration of Plaintiff's "Unopposed Motion for Preliminary Approval of the Class Action Settlement and Other Related Relief" ("Motion") (Doc. **), the accompanying Settlement Agreement and Release ("Agreement") (Doc. **-1), and the accompanying brief and declarations (Doc. **), and all other papers and proceedings herein, it is hereby **ORDERED** that:[2]:

---

[2] Unless otherwise defined herein, all terms used in this Order (the "Order Granting Preliminary Approval") will have the same meaning as defined in the Agreement.

1

DocuSign Envelope ID: D5CD5EC1-FED2-4AE7-B5F9-5AF731BBAA59

1.     The Motion is GRANTED, and the settlement of this action is PRELIMINARILY APPROVED because it appears that, at the final approval stage, the Court "will likely be able to" approve the settlement under the criteria described in Federal Rule of Civil Procedure ("Rule") 23(e)(2) and certify the settlement under Rule 23(a) and (b)(3).[3]  *See* Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).

2.     The Court further grants leave for Plaintiff to file his Second Amended Class and Collective Action Complaint, which was attached as Exhibit F to the Agreement.  S-L shall not be required to answer or respond to the Second Amended Class and Collective Action Complaint, which is filed to effectuate this settlement, and shall have all defenses preserved.

3.     The Court appoints Winebrake & Santillo LLC, and Lichten & Liss-Riordan, P.C. as interim class counsel because they meet all of the requirements under Federal Rule of Civil Procedure 23(g).

**Notice**

4.     The "Notice of Proposed Settlement" form ("Notice Form") attached to the Agreement as Exhibit A and the notice protocols described in paragraph 2.5 of

---

[3] The proposed class, for settlement purposes only, is defined as all individuals "who satisfy all of the following three criteria: (1) are or were a party to a Distributor Agreement with S-L; (2) owned and/or operated a route that included a retail customer in the State of New Jersey at any time between November 20, 2013 and October 20, 2021; and (3) who have not signed an Alternative Dispute Resolution agreement with S-L."

the Agreement are approved pursuant to Rule 23(c)(2)(B). The Claims Administrator is authorized to mail this document, after it is updated with the appropriate dates and deadlines consistent with the Agreement, to the applicable Settlement Class Members as provided in the Agreement.

5.     Any Opt-Out Statement or written objection to the settlement by a Settlement Class Member who has not opted-out, must be sent to the Claims Administrator and postmarked or emailed no later than forty (40) days after the Notice of Proposed Settlement is mailed to the Settlement Class Members. The Claims Administrator will provide any such Opt-Out Statements or written objections to Class Counsel for filing with the motion for final approval of settlement.

**Non-Waiver of ADR and Arbitration Agreements**

6.     By entering into this settlement, S-L shall not be deemed to have waived their right to enforce any arbitration agreements, alternative dispute resolution agreements, or any class, collective, or representative action waivers contained in any such agreements.

**Class Settlement Procedure**

7.     The Court hereby adopts the settlement approval process as set forth in the Agreement.

8.     In the event that the Effective Date, as defined in the Agreement, does not occur, the Settlement, the Agreement, and this Order shall be deemed null and void and shall have no effect whatsoever, other than the non-disclosure provisions in Section 3.12, and the non-admission provisions in Section 3.11 of the Agreement, which shall remain in effect.  In such case, nothing in the Agreement or this Order shall be relied upon, cited as, constitute evidence of, or constitute an admission that class or collective action certification is or may be appropriate in this Action or any other matter.

9.     Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Order and Judgment, Named Plaintiff and all Settlement Class Members and anyone acting on behalf of any Settlement Class Member shall be barred and enjoined from:  (a) further litigation in this Action; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue, or participate on an individual, class action, or collective action basis in any other action, claim, or proceeding against S-L in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.  The Parties are ordered to carry out the Settlement according to the terms of the Agreement.

10.      Pursuant to Rule 23(e)(2), the Court will conduct a Fairness Hearing on

_____, 2022 at _____ a.m./p.m. in Courtroom ___ of the

United States Courthouse, 228 Walnut Street, Harrisburg, PA 17108, for the

purposes of *inter alia*: (a) determining whether the settlement warrants final

approval under Rule 23(e)(2)[4]; (b) determining whether the attorneys' fees and costs

to Class Counsel should be approved under Rule 23(h) and whether the Service

Award to Named Plaintiff should be approved; (c) hearing any timely and properly

filed objections; and (d) entering the Final Order and Judgment.  The Fairness

Hearing may be continued without further notice to Settlement Class Members.

11.      Plaintiff shall file his unopposed motion for final approval of the

Settlement on or before seven (7) days prior to the Fairness Hearing.

_____
Jennifer P. Wilson
Judge of the United States District Court
Middle District of Pennsylvania

---

[4] In addition, at the Fairness Hearing, the Court will also determine: (i) whether the 83 Class Members, who are releasing claims under the Fair Labor Standards Act ("FLSA"), are "similarly situated" for settlement purposes only under 29 U.S.C. § 216(b) of the FLSA pursuant to the three factors set forth in *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012); and (ii) whether the settlement of their FLSA claims should be approved.  *See generally Skaggs v. Gabriel Brothers*, 2021 U.S. Dist. LEXIS 101044 (M.D. Pa. May 28, 2021).

# EXHIBIT C

# FINAL ORDER AND JUDGMENT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BENJAMIN MARANZANO, *on behalf of himself and all others similarly situated*,

      Plaintiff and
      Counterclaim-Defendant,

   v.

S-L DISTRIBUTION COMPANY, LLC,

      Defendant and
      Counterclaimant.

Case No. No. 1:19-cv-01997

Hon. Jennifer P. Wilson

---

S-L DISTRIBUTION COMPANY, LLC,

      Third-Party Complainant,

   v.

BENJAMIN MARANZANO, LLC,

      Third-Party Defendant.

---

### [PROPOSED] FINAL ORDER AND JUDGMENT

**WHEREAS**, the parties have settled this class and collective action lawsuit on behalf of an 83-member putative class and collective defined as all individuals "who satisfy all of the following three criteria: (1) are or were a party to a Distributor Agreement with S-L; (2) owned and/or operated a route that included a retail customer in the State of New Jersey at any time between November 20, 2013 and October 20, 2021; and (3) who have not signed an alternative dispute resolution agreement with S-L." Doc. **-1 at ¶ 1.29.

1

**WHEREAS**, on ***** **, 2022, the Court, pursuant to Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii), entered an order preliminarily approving the settlement of this class action, approving the notice form and protocols by which Class Members would be informed of the settlement, and scheduling an in-person fairness hearing for **** **, 2022. *See* Doc. **; and

**WHEREAS**, Plaintiffs' counsel have informed the Court that all class notice protocols have been followed and that ▮ putative Class Members have objected to or requested exclusion from the settlement. *See* Doc. **-* at ***; and

**WHEREAS**, on ***** **, 2022, Plaintiff filed an Unopposed Motion for Final Approval of the Class Action Settlement And Other Relief ("Final Approval Motion"), *see* Doc. **, and an accompanying brief, *see* Doc. **; and

**WHEREAS**, on *****, **, 2022, the Court presided over the fairness hearing. *See* Doc. **.

**NOW, THEREFORE**, this ___ day of _____, 2022, upon consideration of Plaintiff's Final Approval Motion, *see* Doc. **, the accompanying Agreement, *see* Doc. **-1, the Declaration of Mark J. Gottesfeld, *see* Doc. **-2, the Declaration of *****, *see* Doc. **-3, the accompanying brief, *see* Doc. **, the representations of counsel during the ***** **, 2022 fairness hearing, and all other

2

papers and proceedings herein, it is hereby **ORDERED** that the Final Approval Motion is **GRANTED** as follows:[5]

1.    The Courts certifies, for settlement purposes only, the 83-member settlement class consisting of all individuals "who satisfy all of the following three criteria: (1) are or were a party to a Distributor Agreement with S-L; (2) owned and/or operated a route that included a retail customer in the State of New Jersey at any time between November 20, 2013 and October 20, 2021; and (3) who have not signed an alternative dispute resolution agreement with S-L."  Certification of this class is warranted because the class satisfies the class action requisites described in Fed. R. Civ. P. 23(a) and (b)(3).

2.    The law firms of Winebrake & Santillo, LLC and Lichten & Liss-Riordan, P.C. are appointed Class Counsel.  These firms satisfy all the criteria described in Fed. R. Civ. P. 23(g)(1)(A) and have been appointed class counsel in other wage and hour class actions.  *See generally* Docs. ** and **.

3.    The Court approves the payment of $835,667 to the Class Members as "fair, reasonable, and adequate" under the criteria described in Fed. R. Civ. P. 23(e)(2).

---

[5] Unless otherwise defined herein, all terms used in this Order (the "Final Order and Judgment") will have the same meaning as defined in the Agreement.

4. Because this settlement also releases FLSA claims, the parties have agreed to conditional certification under 29 U.S.C. § 216(b) of the FLSA, for settlement purposes only, as to the 83 Class Members. In determining whether a group of employees are "similarly situated," courts may consider "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536-37 (3d Cir. 2012); *see*, *e.g.*, *Carr v. Flowers Foods, Inc.*, 2019 U.S. Dist. LEXIS 77541, *10-20 (E.D. Pa. May 8, 2019) (certifying FLSA collective). Here, each of the *Zavala* factors supports a finding, for settlement purposes only, that the 83 Class Members are "similarly situated."

5. Moreover, the Court approves the settlement of the Class Members' FLSA claims, for settlement purposes only, and finds that the settlement resolves a bona fide dispute between the parties, the settlement is fair and reasonable to the 83 Class Members, and the settlement does not impermissibly frustrate the implementation of the FLSA. *See generally Skaggs*, 2021 U.S. Dist. LEXIS 101044.

6. The Court approves the payment of a $20,000 Service Award to Named Plaintiff Benjamin Maranzano. Such award falls within the range of service awards approved by courts in other wage and hour class actions. *See, e.g.*, *Roxberry v.*

*Snyders-Lance, Inc.*, 2017 U.S. Dist. LEXIS 193573, *5-6 (M.D. Pa. Nov. 15, 2017) (approving $19,000 service awards to each of the nine named plaintiffs); *In re Janney Montgomery Scott LLC Financial Consultant Litigation*, 2009 U.S. Dist. LEXIS 60790, *36 (E.D. Pa. July 16, 2009) (approving $20,000 service award for each of the three named plaintiffs); *Godshall v. Franklin Mint Co.*, 2004 U.S. Dist. LEXIS 23976, *19-21 (E.D. Pa. Dec. 1, 2004) (approving $20,000 service award for each of two named plaintiffs).

7.    This Court approves the payment to Class Counsel of $433,333 in attorney's fees and costs. This amount, which equals approximately 33% of the total $1,300,000 fund, is reasonable when viewed against the various *Gunter* and *Prudential* factors that courts within the Third Circuit utilize in assessing the reasonableness of attorney's fees in settled class action lawsuits. *See In re: AT&T Corp. Sec. Litig.*, 455 F.3d 160, 165-66 (3d Cir. 2006) (listing factors); *Hall v. Accolade, Inc.*, 2020 U.S. Dist. LEXIS 52632, *22 (E.D. Pa. Marc. 25, 2020) (median fee award in surveyed class actions was 33.33%); *Creed v. Benco Dental Supply Co.*, 2013 U.S. Dist. LEXIS 132911, *17 (M.D. Pa. Sept. 17, 2013) ("an award of one-third of the settlement is reasonable in comparison to awards in other cases."). In addition, when compared to Class Counsel's purported lodestar of $***,*** using the hourly rates described in the Philadelphia Community Legal Services fee schedule, *see* Doc. ** at **; Doc. ** at **, the $***,*** attorney's fee

payment results in a *.*** multiplier, which falls within the range of acceptable multipliers in the Third Circuit. *See Tavares*, 2016 U.S. Dist. LEXIS 57689, at 54-55 (citing cases and approving 2.29 multiplier).

8.    Nothing relating to this Order, or any communications, papers, or orders relating to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by S-L or S-L Releasees of any liability, culpability, negligence, or wrongdoing toward Named Plaintiff, Settlement Class Members, or any other person, or that class or collective action certification is appropriate in this or any other matter.  There has been no determination by any Court as to the merits of the claims asserted by Named Plaintiff against S-L or as to whether a class should be certified, other than for settlement purposes only.  Furthermore, nothing in the Agreement or this Order shall be cited to as, construed to be, admissible as, or considered any form of waiver of any alternative dispute resolution agreements, provisions, or policies by S-L or S-L Releasees.

9.    The Action is dismissed on the merits and with prejudice, and Named Plaintiff, Qualified Settlement Class Members, and anyone acting on their behalf, shall be barred and enjoined from:  filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on an individual, class action, or collective action basis in any other action, claim, or proceeding against S-L in any forum in which any of the claims released under this Settlement are asserted, or

which in any way would prevent any such claims from being extinguished; or seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

10.     By this Judgment, each Qualified Settlement Class Member who has not validly and timely requested exclusion from the Settlement by opting out shall fully release S-L and the S-L Releasees from the Non-FLSA Claims Released by Qualified Settlement Class Member Releasors, as defined in the Agreement, through January 15, 2022.

11.     In addition, any Qualified Settlement Class Member who cashes or deposits a settlement check (or otherwise receives any Unclaimed Funds) shall fully release and discharge S-L and the S-L Releasees from any and all FLSA Claims Released by Qualified Settlement Class Member Releasors (as defined in the Agreement) through January 15, 2022, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime compensation, and/or failure to pay for all hours worked through January 15, 2022.

12.     By entering into this Settlement, S-L shall not be deemed to have waived their right to enforce any arbitration agreements, alternative dispute resolution agreements, or any class, collective, or representative action waivers contained in any such agreements.

13.    The Court shall have exclusive and continuing jurisdiction over this Action for purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Agreement and this Final Order and Judgment.

14.    The Parties are ordered to carry out the Settlement as provided in the Agreement.

15.    This Order shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.


**IT IS SO ORDERED**

Dated: _____


_____
Jennifer P. Wilson
Judge of the United States District Court
Middle District of Pennsylvania

# EXHIBIT D

# NOTICE OF FINAL SETTLEMENT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BENJAMIN MARANZANO, *on behalf of himself and all others similarly situated*,

        Plaintiffs,

    v.

S-L DISTRIBUTION COMPANY, LLC,

        Defendant.

Case No. No. 1:19-cv-01997

Hon. Jennifer P. Wilson

## <u>OFFICIAL COURT NOTICE OF FINAL SETTLEMENT</u>

**You previously received Notice of a Proposed Settlement of the lawsuit identified above, and you did not opt-out of the proposed class action settlement. Recently, the United States District Court issued final approval of the settlement of the lawsuit and authorized this Notice.**

**A settlement check payable to you is enclosed.** By the Court's Order approving the settlement, you are deemed to have waived certain state, local, and common wage and hour laws and wage payment laws, including claims to recover unpaid wages, as described in the prior Notice that you received. By cashing or depositing your settlement check, you will also release any claims you had against S-L Distribution Company, LLC (and its affiliates) under the federal Fair Labor Standards Act through January 15, 2022, as set forth in Section 2. If you do not cash or deposit your settlement check for 120 days, the amount will be paid to your State's unclaimed funds administrator on your behalf.

Neither Class Counsel nor S-L make any representations concerning the tax consequences of your Settlement payment. You are advised to obtain personal tax advice prior to acting in response to this Notice.

If you have additional questions about the settlement, you may contact the lawyers who were appointed to represent the class ("Class Counsel"): (i) **Lichten & Liss-Riordan, P.C.**, 729 Boylston Street, Suite 2000, Boston, MA 02116; Phone **(617) 994-5800**; and (ii) **Winebrake & Santillo, LLC**, 715 Twining Road, Suite 211, Dresher, PA 19025; Phone **(215) 884-2491**.

Please do not contact the Court.

1

## HOW YOU GET A PAYMENT

| 1. | How do I get my payment? |
|---|---|

A check is enclosed. All you have to do is cash or deposit the settlement check. Settlement checks that are not cashed or deposited on or before **[120 days after mailing]** will be null and void.

| 2. | What am I giving up by cashing or depositing my settlement check? |
|---|---|

If you cash or deposit your settlement check, you will be deemed to have further waived, released, and forever discharged S-L and the S-L Releasees from any and all Fair Labor Standards Act claims through January 15, 2022, including claims under any legal theory for failure to pay minimum wage, failure to pay overtime compensation, and/or failure to pay for all hours worked (the "Released FLSA Claims"). By cashing or depositing your settlement check, you will be deemed to have "opted-in" to the FLSA collective action asserted in the Complaint.

The Released Claims (as explained in the Notice of Proposed Settlement you previously received) and Released FLSA Claims include liquidated and punitive damages based on said claims, and are intended to include all claims described or identified herein through January 15, 2022. However, the Released Claims do **not** include any rights or claims (i) that may arise after January 15, 2022; or (ii) which may not be infringed, limited, waived, released, or extinguished as a matter of law.

By not opting out of this settlement, you are also barred from participating in any other legal actions against the S-L Releasees for the claims released by this settlement, and you will not opt-into, will withdraw any opt-in form, will dismiss the action or yourself from the actions where you are a claimant, plaintiff, or appellant, and will opt-out of those actions if you become aware of such actions.

This release of claims may be raised as a complete defense to and will preclude and bar any action or proceeding that is encompassed by this release. If you have questions about the release, you should contact Class Counsel.

| 3. | What if I do not cash or deposit the settlement check? |
|---|---|

If you do not cash or deposit the settlement check by **[DATE]**, you will be deemed to **not** have released the Released FLSA Claims described in Section 2.

However, regardless of your decision to cash or deposit the settlement check, because you did not previously request exclusion from the settlement in accordance with the instructions provided in the previous Notice of Proposed Settlement, you have already been deemed to have waived, released, and forever discharged the Released Claims against S-L and the S-L Releasees (as described in that Notice).

By participating in this settlement, regardless of whether you cash or deposit your settlement check, you agree and acknowledge that this is a knowing and voluntary waiver of the Released Claims and/or Released FLSA Claims. You shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits you may otherwise have had relating to the claims identified and released above and/or the prior Notice.

### FOR MORE INFORMATION

| | |
|---|---|
| **4.** | **Are there more details about the Settlement?** |

This Notice summarizes certain information regarding the Settlement. More details are in the Settlement Agreement and Release ("Settlement"). You are encouraged to read it. To the extent there is any inconsistency between this Notice and the Settlement, including between the description of the releases as provided in Sections 2-3 above and the description of the release as provided in the Settlement, the provisions in the Settlement control. You may obtain a copy of the Settlement by sending a request, in writing to:

**[Claims Administrator Contact]**

| | |
|---|---|
| **5.** | **How do I get more information?** |

If you have other questions about the settlement, you can contact the Claims Administrator, or Class Counsel at the addresses and/or telephone numbers below:

**[INSERT PREFERRED CONTACT INFORMATION]**

**Please do not contact the Court.**

DATED: _____

# EXHIBIT E

# CLASS ACTION FAIRNESS ACT NOTICE

[**CLAIMS ADMINISTRATOR LETTERHEAD**]

[**DATE**]
[**STATE**] Attorney General [**NAME**]
Office of the [**STATE**] Attorney General [or **Attorney General of the United States**]
[**ADDRESS**]

Re:    *Maranzano v. S-L Distribution Company, LLC*, Case No. 1:19-cv-01997 (M.D. Pa.)

<u>Notice pursuant to 28 U.S.C. § 1715</u>

Dear [**NAME**]:

Snyder's Lance, Inc., as a successor-in-interest to Defendant S-L Distribution Company, LLC ("S-L"), provides this notice pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. Pursuant to CAFA, you are not required to comment on the settlement. However, if you wish to comment, you must do so within 90 days of being served with this notice. *See* 28 U.S.C. § 1715(d).

The parties filed a Motion for an Order Preliminarily Approving the Class Action Settlement[6] with the Court on [**DATE**]. The Court has not yet held a preliminary hearing or scheduled a hearing for final approval of the settlement. In accordance with CAFA, S-L encloses the following Appendix A:

1.   a copy of the First Amended Complaint in the above-referenced matter;
2.   the proposed form of notification to class members of the proposed class and collective action settlement;
3.   the Settlement Agreement and Release ("Agreement") in this action (including its Ex. F, the Second Amended Complaint in the lawsuit); and
4.   a list of class members identified from the parties' available records as of [**DATE**], as residing in your state.

Under the terms of the proposed Agreement, allocation of the Net Settlement Fund is based upon a formula developed by Class Counsel with the approval of S-L's Counsel (*see* Agreement at Section 3.6). The allocation formula will take into account the Applicable Workweeks attributable to the individual Qualified

---

[6] The capitalized terms herein are defined in the Settlement Agreement and Release.

Settlement Class Members. It is estimated that total amount of the settlement checks for the Settlement Class Members listed in the enclosed class list as residing in your state as of [**DATE**], is $_____, and with an estimated average settlement check of $____.

      If you have questions about this notice, the lawsuit, or the enclosed materials, or if you did not receive any of the above-listed materials, please contact S-L's Counsel and Class Counsel listed below.

Sincerely,

[**CLAIMS ADMINISTRATOR**]

Enclosures

**Class Counsel:**

Mark J. Gottesfeld
Peter Winebrake
R. Andrew Santillo
Michelle Tolodziecki
WINEBRAKE & SANTILLO, LLC
715 Twinning Road, Suite 211
Dresher, PA 19025
Telephone: 215.884.2491
Fax: 215.884.2492

Harold Lichten
Matthew Thomson
Zachary L. Rubin
LICHTEN & LISS-RIORDAN, P.C.
729 Boylson St., Suite 2000
Boston, MA 02116
Telephone: 617.994.5800
Fax: 617.994.5801

**S-L's Counsel:**

Sari M. Alamuddin
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, 28th Floor
Chicago, IL 60606
Telephone: 312.324.1000
Fax: 312.324.1001

Michael J. Puma
Benjamin K. Jacobs
Emily C. Reineberg
Antonia Moran
MORGAN, LEWIS, & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103
Telephone: 215.963.5000
Fax: 215.963.5001

Lauren E. Marzullo
MORGAN, LEWIS, & BOCKIUS LLP
One Oxford Centre, 32nd Floor
Pittsburgh, PA 15219
Telephone: 412.560.3300
Fax: 412.560.7001

**Claims Administrator:**

[**NAME**]
Maranzano v. S-L Distribution Company, LLC Settlement
[**ADDRESS**]
[**TELEPHONE NUMBER**]
[**EMAIL ADDRESS**]

# EXHIBIT F

## PROPOSED SECOND AMENDED COMPLAINT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BENJAMIN MARANZANO, on behalf of himself and all others similarly situated, | : | CIVIL ACTION No. 1:19-cv-01997-JEJ |
|  | : |  |
|  | : |  |
| Plaintiff, | : |  |
| v. | : | FILED ELECTRONICALLY |
|  | : | ON _____ |
| S-L DISTRIBUTION COMPANY, LLC, | : |  |
|  | : | CLASS ACTION |
| Defendant. | : |  |
|  | : | JURY TRIAL DEMANDED |

## **[PROPOSED] SECOND AMENDED COMPLAINT – CLASS/COLLECTIVE ACTION**

Benjamin Maranzano ("Plaintiff") brings this class and collective action lawsuit against S-L Distribution Company, Inc. ("Defendant") for violations of the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. §§ *34:11-4.1, et seq.* and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. §§ 34:11-56a, *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

1.    Jurisdiction is proper under 28 U.S.C. § 1332.

2.    This Court has subject matter jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

3.    Venue is proper under 29 U.S.C. § 1391 because Defendant is

1

headquartered in this judicial district and because the underlying Distributor Agreement requires that litigation occur in a federal or state court encompassing York County.

## PARTIES

4.    Plaintiff resides at 17 Bristol Road, Piscataway, NJ 08854.

5.    Defendant is headquartered at 1250 York Street, Hanover, PA 17331 (York County).

6.    Prior to around 2016, Defendant operated under the name S-L Distribution Company, Inc.

7.    Defendant is engaged in commerce and, furthermore, employs individuals engaged in the production of goods for commerce and/or handling, selling, or working on goods or materials that have been moved in or produced in commerce.  As such, Defendant is covered by the FLSA.

## FACTS

8.    Defendant, according to its website, "is a wholesale distributor of various snack food products manufactured by subsidiaries and affiliates of Snyder's-Lance, Inc."

9.    Throughout New Jersey, Defendant pays workers to deliver/distribute snack food products to retail stores and other customers within specific geographic areas referred to as "routes."  Defendant requires

these workers to form corporations as a condition of doing business with Defendant and refers to the workers as "IBOs." Such terminology will be used throughout this complaint.

10.     Plaintiff works for Defendant as an IBO and, in order to work for Defendant, he formed a corporation called "Benjamin Maranzano LLC" and headquartered at his home.

11.     Plaintiff regularly works more than forty hours per week for Defendant. Specifically, during the COVID-19 pandemic, Plaintiff routinely worked more than forty-five hours each week.

12.     Most of the products that Plaintiff and other New Jersey IBOs deliver/distribute are manufactured outside of New Jersey.

13.     IBOs use vehicles to transport the products from Defendant's warehouses to the customers.

14.     Defendant's company website states that "[t]he individual(s) who own the IBO entity must have a valid driver's license." The website further explains that "[a]n IBO is responsible for providing its own vehicle" and that "[c]ommon delivery vehicles used for this type of business are step vans, box trucks or trailers."

15.     The work of Plaintiff and other IBOs falls squarely within Defendant's usual course of business. Indeed, Plaintiff and other IBO's are

central to Defendant business as "a wholesale distributor of various snack food products."

16.     Plaintiff and other IBO's are not engaged in independently established trades, occupations, professions, or businesses.  Rather, IBO's generally work exclusively for Defendant and the associated corporate entities are formed and exist for the sole purpose of working for Defendant.

17.     Each week, Defendant makes withholdings from the earnings of Plaintiff and other IBOs.  These withholdings are itemized on weekly "settlement sheets" and include, *inter alia*, withholdings for route loan repayments, truck loan repayments, truck rental payments, and electronic equipment.

18.     Each week, Defendant diverts the earnings of Plaintiff and other IBOs by requiring them to personally pay for work-related expenses such, *inter alia*, gas expenses, vehicle maintenance/repair expenses, and insurance expenses.

19.     Plaintiff estimates that, during the past 6 years, Defendant has subjected him to pay withholdings and diversions far exceeding $100,000.

20.     Defendant does not pay Plaintiff or any other IBO an overtime premium for those hours worked over forty in a workweek.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

21.     Plaintiff brings this action on behalf of himself and other individuals who, either individually or through a closely held corporation, performed work for Defendant or any of its related or predecessor companies (including, *inter alia*, S-L Distribution Company, Inc. and SL Routes, LLC) as an IBO in New Jersey within the past 6 years.

22.     Plaintiff brings his FLSA claims on behalf of a collective consisting of all individuals in that same class who have timely claims under the FLSA.

23.     Class action treatment of this action appropriate because all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.  In particular:

(a)     The class includes over 50 individuals, all of whom are readily ascertainable based on Defendant's records and are so numerous that joinder of all class members is impracticable.

(b)     Plaintiff is a class member, his claims are typical of the claims of other class members, and he has no interests that are antagonistic to or in conflict with the interests of other class members.

(c)     Plaintiff and his lawyers will fairly and adequately represent the class members and their interests.

(d)    Questions of law and fact are common to all class members, because, *inter alia,* this action concerns Defendant's common business policies and practices, as summarized herein.  The legality of these practices will be determined through the application of generally applicable legal principles to common facts.

(e)    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

24.    Plaintiff's FLSA claims should proceed as a collective action because Plaintiff and other IBOs, having worked pursuant to the common pay policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

## COUNT I

25.    All previous paragraphs are incorporated as though fully set forth herein.

26.    Plaintiff and the class members are employees entitled to the NJWPL's protections.

27.    Defendant is an employer required to pay Plaintiff and the class

members in accordance with the NJWPL.

28.     The NJWPL provides that "[n]o employer may withhold or divert any portion of an employee's wages."  See N.J.S.A. §§ *34:11-4.4.*

29.     Defendant has violated the NJWPL by subjecting Plaintiff and other class members to various wage withholdings/diversions.

## COUNT II

30.     All previous paragraphs are incorporated as though fully set forth herein.

31.     Plaintiff and the class members are employees entitled to the NJWHL's protections.

32.     Defendant is an employer required to pay Plaintiff and the class members overtime pay in accordance with the NJWHL.  N.J.S.A. 34:11-56a.

33.     Defendant has violated the NJWHL by failing to pay Plaintiff and other class members an overtime premium of one-and-one-half times their regular hourly rate, or, in the alternative, one-and-one-half times the statutory minimum wage, for all hours worked in excess of forty in each workweek.

## COUNT III

34.     All previous paragraphs are incorporated as though fully set forth herein.

35.   The FLSA requires that employees receive overtime premium pay calculated at 150% of their regular pay rate for all hours worked over 40 per week.  <u>See</u> 29 U.S.C. § 207(a)(1).

36.   Defendant is an employer required to comply with the FLSA's overtime pay mandate, and Plaintiff and other collective members are employees entitled to the mandate's protections.

37.   Defendant willfully violated the FLSA by failing to pay Plaintiff and the collective members overtime premium compensation for hours worked over 40 per week.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks the following relief on behalf of himself and other class members: (A) class and collective action certification; (B) payments equaling the value of all improper wage withholdings/diversions and the full amount of all wrongfully withheld overtime wages; (C) all available penalties, liquidated damages, and prejudgment interest; (D) attorney's fees and litigation expenses; and (E) any other relief the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial.

DocuSign Envelope ID: D5CD5EC1-EED2-4AE7-B5F9-5AF731BDAA59

Date: _____                          Respectfully,


                                      */s/ Matthew Thomson*
                                      Harold L. Lichten, Esq.
                                      Matthew Thomson, Esq.
                                      LICHTEN & LISS-RIORDAN, P.C.
                                      729 Boylston Street, Suite 2000
                                      Boston, MA  02116
                                      (617) 994-5800

                                      Peter Winebrake, Esq.
                                      R. Andrew Santillo, Esq.
                                      Mark J. Gottesfeld, Esq.
                                      WINEBRAKE & SANTILLO, LLC
                                      715 Twining Road, Suite 211
                                      Dresher, PA 19025
                                      (215) 884-2491


                                      *\*pro hac vice admission*

                                      *Attorneys for Plaintiff*