IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| BENJAMIN MARANZANO, | : | |
| Plaintiff/Counterclaim Defendant, | : | 1:19-cv-01997-JPW |
| | : | |
| v. | : | |
| | : | |
| S-L DISTRIBUTION COMPANY, LLC, | : | |
| Defendant/Counterclaim Plaintiff. | : | |
| | : | |

**BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF THE CLASS ACTION
SETTLEMENT AND OTHER RELATED RELIEF**

Date:  February 18, 2022

Mark J. Gottesfeld
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

*Other Counsel Listed on
Signature Page*

**<u>TABLE OF CONTENTS</u>**

I.     BACKGROUND ..................................................................................................2

    A.     Facts and Legal Claims ......................................................................2

    B.     The Settlement..................................................................................7

II.    ARGUMENT ...................................................................................................11

    A.     Preliminary Approval of Class Action Settlements ...........................11

    B.     Preliminary Approval is Warranted .................................................12

         1.   The Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)" ..................................................................12

         2.   The Court "will likely be able to certify the class." ...................22

         3.   The proposed notice satisfies Rule 23(c)(2)(B) ..........................28

    C.     W&S and LRR should be appointed Interim Class Counsel. ............29

III.   CONCLUSION................................................................................................30

## **TABLE OF AUTHORITIES**

**CASES:**                                                                    **Page**

Amchem Products, Inc. v. Windsor,
521 U.S. 591 (1997)..........................................................................................................17, 28

Atis v. Freedom Mortgage Corpo.,
2016 U.S. Dist. LEXIS 178527 (D.N.J. Dec. 27, 2016),..........................................8

Baby Neal v. Casey,
43 F.3d 48 (3d Cir. 1994)................................................................................. 23-24

Craig v. Rite Aid Corp.,
2013 U.S. Dist. LEXIS 2658 (M.D. Pa. Jan. 7, 2013)..............................................20

Creed v. Benco Dental Supply Co.,
2013 U.S. Dist. LEXIS 132911 (M.D. Pa. Sept. 17, 2013) ......................................19

Del Valle v. Empire Home Health Care,
2021 U.S. Dist. LEXIS 153355 (E.D. Pa. Aug. 3, 2021)......................................1, 20

Devine v. Northeast Treatment Centers, Inc.,
2021 U.S. Dist. LEXIS 197924 (E.D. Pa. Oct. 14, 2021)..........................................9

Flores v. Eagle Diner Corp.,
2019 U.S. Dist. LEXIS 141743 (E.D. Pa. Aug. 21, 2019).........................................20

Galt v. Eagleville Hospital,
310 F. Supp. 3d 483 (E.D. Pa. 2018) .........................................................................23

Hall v. Accolade, Inc.,
2019 U.S. Dist. LEXIS 143542 (E.D. Pa. Aug. 23, 2019)..................... 12-15, 19, 22

Herbin v. PNC Financial Services Group, Inc.,
2020 U.S. Dist. LEXIS 13095 (W.D. Pa. Jan. 27, 2020)............................................1

Hargrove v. Sleepy's, LLC,
106 A.3d 449 (N.J. 2015) ................................................................................... 15-16

In re Baby Products Antitrust Litig.,
708 F.3d 163 (3d Cir. 2013) ......................................................................................15

In re NFL Players Concussion Injury Litig.,
821 F.3d 410 (3d Cir. 2016),................................................................................ 13-14

In re Janney Montgomery Scott LLC Financial Consultant Litigation,
2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009)......................................... 21-22

In re Prudential Insurance Co. America Sales Practice Litig.,
148 F.3d 283 (3d Cir. 1998)...........................................................................................27

Maranzano v. S-L Distribution Company, LLC,
2020 U.S. Dist. LEXIS 239355 (M.D. Pa. Dec. 18, 2020) ................................. 4-5, 15

Maranzano v. S-L Distribution Company, LLC,
2021 U.S. Dist. LEXIS 239080 (M.D. Pa. June 10, 2021)...................................... 4-5

Mode v. S-L Distribution Co.,
2021 U.S. Dist. LEXIS 225822 (W.D.N.C. Nov. 12, 2021) ................................. 14-16

Reyes v. Netdeposit, LLC,
802 F.3d 469 (3d Cir. 2015)................................................................................. 22-23

Rivera v. Martin's Famous Pastry Shoppe, Inc.,
2021 U.S. Dist. LEXIS 28829 (M.D. Pa. Feb. 16, 2021) ...............................14, 24, 30

Rodriguez v. National City Bank,
726 F.3d 372 (3d Cir. 2013)..........................................................................................23

Roxberry v. Snyders-Lance, Inc.,
2017 U.S. Dist. LEXIS 193573 (M.D. Pa. Nov. 15, 2017) .........................................21

Skaggs v. Gabriel Brothers,
2021 U.S. Dist. LEXIS 101044 (M.D. Pa. May 28, 2021)..............................................1

Solkoff v. Pennsylvania State University,
435 F. Supp. 3d 646 (E.D. Pa. 2020) ...........................................................................9

Stewart v. Abraham,
275 F.3d 220 (3d Cir. 2001).........................................................................................24

Tavares v. S-L Distribution Co., Inc.,
2016 U.S. Dist. LEXIS 57689 (M.D. Pa. May 2, 2016) .................................14, 24, 26

Troche v. Bimbo Foods Bakeries Distribution,
2015 U.S. Dist. LEXIS 108944 (W.D.N.C. Aug. 18, 2015).........................................16

Tumpa v. IOC-PA, LLC,
2021 U.S. Dist. LEXIS 2806 (W.D. Pa. Jan. 7, 2021)...................................................1

Tyson Foods, Inc. v. Bouaphakeo,
136 S. Ct. 1036 (2016)................................................................................26

Weiss v. York Hospital,
745 F.2d 786 (3d Cir. 1984).........................................................................25

Williams v. JaniKing of Philadelphia, Inc.,
837 F.3d 31 (3d Cir. 2016)...........................................................................24

**STATUTES/CODES/REGULATIONS:**

N.J.S.A. §§ 34:11-4.1, *et seq.* .............................................................1, 17

N.J.S.A. §§ 34:11-56a, *et seq.*....................................................................1

**ADDITIONAL AUTHORITY:**

Manual for Complex Litigation, Fourth, (Federal Judicial Center 2008)...................................11

William Rubenstein, Alba Conte, and Herbert B. Newberg,
Newberg on Class Actions at §4:69.........................................................27

Plaintiff Benjamin Maranzano ("Maranzano") files this unopposed motion[1]

seeking preliminary approval of the classwide settlement of claims under the New

Jersey Wage Payment and Collection Law ("NJWPL"), N.J.S.A. §§ 34:11-4.1, *et*

*seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. §§ 34:11-56a,

*et seq.*, and preliminary certification of the class.[2]

Maranzano and Defendant S-L Distribution Company, LLC ("S-L") have

agreed to settle this class action lawsuit on behalf of Maranzano and 82 other

---

[1] S-L maintains, among other things, that Maranzano's claims are without merit, he and others operated as bona fide independent contractors pursuant to their respective business entity(ies)'s Distributor Agreement(s) with S-L, they are not owed any damages, and, in the event that the Court declines to grant this motion, reserves the right to argue that Maranzano's claims are inappropriate for class or collective treatment. Nevertheless, S-L does not oppose the relief sought in Maranzano's motion given the parties' mutual resolution of a bona fide dispute and the inherent risks and costs with continued litigation between the parties.

[2] Maranzano, as a condition of settlement, has amended the complaint to include a Fair Labor Standards Act ("FLSA") claim. See Doc. 116-1 at pp. 61-69. Pennsylvania district courts generally review FLSA settlements for fairness. See Skaggs v. Gabriel Brothers, 2021 U.S. Dist. LEXIS 101044, *3-4 (M.D. Pa. May 28, 2021) (Wilson, J.). Importantly, for purposes of the instant motion, Rule 23's preliminary approval and notice protocols do not apply to FLSA collective settlements. See Herbin v. PNC Financial Services Group, Inc., 2020 U.S. Dist. LEXIS 13095, *2 n. 2 (W.D. Pa. Jan. 27, 2020). Thus, the fairness of the resolution of the FLSA claim can be determined in a single step at the "final approval" stage of the Rule 23 approval process. See, e.g., Del Valle v. Empire Home Health Care, 2021 WL 5534703, 2021 U.S. Dist. LEXIS 153355, *1 n. 1 (E.D. Pa. Aug. 3, 2021) (observing that plaintiff "will request judgment on the FLSA collective action together with final approval of the PMWA class action"); Tumpa v. IOC-PA, LLC, 2021 WL 62144, 2021 U.S. Dist. LEXIS 2806, *11-15 (W.D. Pa. Jan. 7, 2021) (performing FLSA fairness analysis at the final approval stage).

1

individuals "who satisfy all of the following three criteria:  (1) are or were a party to a Distributor Agreement with S-L; (2) owned and/or operated a route that included a retail customer in the State of New Jersey at any time between November 20, 2013 and October 20, 2021; and (3) who have not signed an Alternative Dispute Resolution agreement with S-L."  Doc. 116-1 at ¶ 1.29.

The proposed settlement requires S-L to make a maximum gross total payment up to $1,300,000 to be allocated in the manner described at pp. 7-8, infra.

Under the December 1, 2018 amendments to Federal Rule of Civil Procedure ("Rule") 23, the Court "should direct notice in a reasonable manner" of the settlement to the Class Members because, at the final approval stage, the Court "will likely be able to" (i) grant final approval of the settlement under the criteria described in Rule 23(e)(2) and (ii) certify the settlement class.  See Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).  Moreover, the Court should approve the class notice form and protocols because they constitute "the best notice that is practicable" under Rule 23(c)(2)(B) and should appoint W&S and LRR to serve as interim class counsel under Rule 23(g)(3).

## I.  BACKGROUND

### A. Facts and Legal Claims.

This Court has written several opinions summarizing the parties' competing allegations and legal claims in this lawsuit.  See, e.g., Docs. 31, 82.

The primary dispute in this lawsuit is whether Maranzano and other Class Members are independent contractors or employees of S-L.  Maranzano asserts that he and other Class Members are employees of S-L and therefore are entitled to the protections of the NJWPL which prohibit certain deductions and diversion from an employee's wages and the NJWHL which entitles an employee to overtime pay.  S-L asserts, among other things, that Maranzano and other Class Members are independent contractors and, as a result, he and other Class Members are not entitled to any of the protections afforded under the NJWPL and NJWHL.

Judge Jones summarized some of Maranzano's assertions in this lawsuit:

> Defendant S-L requires individuals to form corporations, called "IBOs," to distribute its product.  Defendant also required Plaintiff and the other putative class members to sign contracts, ("Distributor Agreements"), though Plaintiff maintains that these Agreements are void and do not govern the relationship between the parties.

> Plaintiff complied with S-L's incorporation requirement by forming an IBO called Benjamin Maranzano LLC, ("BML"), which was headquartered at his home. Plaintiff avers that these IBOs typically work exclusively for S-L, using vehicles to transport Defendant's products from warehouses to customers. Generally, Defendant then remits payment to Plaintiffs after making certain withholdings on weekly "settlement sheets." These weekly withholdings include route loan repayments, truck loan repayments, truck rental payments, and charges for electronic equipment.  Defendant similarly diverts earnings from the IBOs for additional expenses that Plaintiff characterizes as work expenses, including for gas, vehicle maintenance/repairs, and insurance. Plaintiff estimates the total of such pay withholdings and diversions from his IBO alone amount to more than $100,000.

3

See Maranzano v. S-L Distribution Company, LLC, 2020 U.S. Dist. LEXIS 239355, *2-4 (M.D. Pa. Dec. 18, 2020) (internal citations omitted).  In addition to asserting deduction claims under the NJWPL, Maranzano alleges that S-L violated the NJWHL and FLSA because IBOs allegedly work more than 40 hours per week in a typical week and SL does not pay IBOs any overtime premium compensation. See Doc. 116-1 (¶ 20) at p. 64.

In response to this lawsuit, S-L has filed a counterclaim against Maranzano and third-party claims against Benjamin Maranzano LLC, the corporate entity that Maranzano claims he formed to enter into a Distributor Agreement ("DA") with S-L. The counterclaim generally alleges that if Maranzano is misclassified as an independent contractor, then Maranzano would have unjustly received the revenue received from products he purportedly sold along with other rights and benefits afforded an independent contractor,[3] see Doc. 76, while the third-party claim essentially alleges that the DA covers the claims brought by Maranzano and require indemnification, and that Maranzano's filing of the Complaint constitutes a breach of his corporate entity's obligations under the DA, see Doc. 43.

The parties have extensively litigated this case.  At the outset of this litigation, the parties briefed whether Maranzano's NJWPL claim should be

---

[3] Judge Jones also summarized some of S-L's assertions underlying its counterclaim in Maranzano v. S-L Distribution Company, LLC, 2021 U.S. Dist. LEXIS 239080, *4-7 (M.D. Pa. June 10, 2021).

dismissed and Judge Jones issued a written opinion holding that Maranzano's NJWPL claim could proceed "at th[at] juncture." See Maranzano, 2020 U.S. Dist. LEXIS 239355.  In that motion, S-L argued *inter alia* that IBOs "are properly characterized as independent contractors, not employees, based in part on the Distributor Agreement."  Id. at *6.  Also, S-L argued that that Maranzano did not receive "wages" which is defined by the NJWPL as "the direct monetary compensation for labor or services rendered by an employee"; instead, S-L asserted that Maranzano (and other IBOs) receive "direct payment for products [Maranzano] sells and distributes to his customers" and therefore Maranzano is unable to state a claim for improper deductions/diversion from "wages" under the NJWPL.  Id. at *6-7.

Similarly, the parties briefed whether S-L's counterclaim for unjust enrichment should be dismissed and Judge Jones issued a written opinion holding that S-L's counterclaim for unjust enrichment should proceed "at th[at] juncture." See Maranzano, 2021 U.S. Dist. LEXIS 239080, at *15.

Further, the parties have also fully briefed whether S-L's third-party complaint that it asserted against Maranzano's corporate entity should be dismissed, see Docs. 61, 87, 95, 97, 98, and fully briefed whether this class should proceed as a class action, see Docs. 62, 83, 89.  However, these motions remain undecided.

In addition to all of this motion practice, the parties have engaged in extensive discovery.  Maranzano responded to over 30 separate document requests and produced over 3,000 pages of documents, answered 17 separate interrogatories, and deposed 3 of S-L's employees.   The documents produced by Maranzano consisted of *inter alia* tax documents for 9 years, bank and credit card statements and various other financial documents, hundreds of receipts regarding expenses, emails, and various other documents concerning his work for S-L.

 Likewise, S-L responded to 24 separate document requests and produced over 4,000 pages of documents, answered 19 separate interrogatories, and deposed Maranzano and one of Maranzano's "helpers."  The documents produced by S-L included *inter alia* documents pertaining to a sample of Class Members (such as DAs, correspondence to IBOs, documents regarding the purchase, finance, and selling of routes), alleged training materials/policies for S-L employees, job descriptions for various S-L employees, planograms, and various memoranda sent to IBOs.

 S-L also produced data for the Class Members which provided Plaintiff's Counsel with the number of putative class members and the number of workweeks that each worked pursuant to a DA with S-L during the statutory period, as well as which version of S-L's DA was executed by each individual.

S-L strongly denies any liability, denies that (absent settlement) Rule 23

class or Section 216(b) collective certification would be appropriate, and/or denies that Maranzano or anyone he seeks to represent is entitled to damages in this case. Nonetheless, faced with the significant expenses and uncertainty of the resolution the claims being asserted in this lawsuit, the parties engaged in mediation proceedings overseen by Michael Dickstein, a mediator with vast experience mediating class and collective actions arising under the FLSA and other state wage laws.[4]  The mediation proceedings  ultimately resulted in a settlement.[5]

### B.  The Settlement.

The settlement requires S-L to make a total maximum gross payment up to $1,300,000 that, subject to this Court's approval of the terms of the settlement, will be allocated as follows:  (i)  a maximum of $760,667 will be allocated to Class Members based on each individual Class Member's proportional share of workweeks during the relevant time period; (ii) a $20,000 service award will be paid to Maranzano; (iii) $433,333 in attorney's fees and expenses will be paid to Plaintiff's Counsel; (iv) $11,000 will be paid to Settlement Services, Inc. ("SSI") to cover settlement administration expenses; and (v) $75,000 will be placed in a

---

[4] See www.dicksteindisputeresolution.com.
[5]  The mediation proceedings also addressed potential resolution of various litigation in addition to the underlying lawsuit, including the three other separate lawsuits in this Court asserting claims under Connecticut, New Hampshire, and Massachusetts wage laws.

"reserve fund" to be utilized to resolve any disputes by Class Members who disagree with the number of workweeks utilized to determine their individual settlement allocation amounts.[6]  See Doc. 116-1 at ¶¶ 1.16, 1.25, 1.26, 2.2, 3.2.  If the Court disapproves of the requested service award, attorney's fees and expenses, or settlement administration expenses, the disapproved monies will enhance the payments to Class Members.  See id. at ¶¶ 2.2, 3.2(b), 3.3.

Each Class Member's share of the settlement is based on his/her individual share of the aggregate weeks worked by all Class Members pursuant to a DA with S-L from using a six-year statutes of limitations from when the Complaint was filed, from November 20, 2013 to October 20, 2021.  See Doc. 116-1 at ¶ 1.3.  The NJWPL arguably carries a six-year limitations period.  See Atis v. Freedom Mortgage Corpo., 2016 U.S. Dist. LEXIS 178527, *7 (D.N.J. Dec. 27, 2016) ("The statute of limitations of a NJWPL claim is unclear, but one court in this District has held it to be six years.").

In other words, Class Members who have worked many weeks are allocated more money than those who worked few weeks.  Each Applicable Workweek for

---

[6] If more than $20,000 of the reserve fund is unused, it will be redistributed on a pro rata basis to all Qualified Settlement Class Members on a pro rata basis.  See Doc. 116-1 at ¶ 1.25.  If less than $20,000 remains in the reserve fund after correcting any errors in the workweek calculation, the amount shall be donated to the Pennsylvania IOLTA Board as cy pres.  See id.  Under no circumstances will the reserve funds revert to S-L.

the 34 Class Members who S-L is not aware of being subject to a possible release of their claims[7] against S-L is worth a gross amount[8] of $68.63 for each Applicable Workweek and these Class Members worked 13,534 weeks out of the 23,445 total Applicable Workweeks covered by this settlement.  When IBOs sell their routes, it is S-L's practice to require S-L and IBOs to execute and exchange mutual general releases of claims.  As a result, it is S-L's position that Class Members who have executed a general release of claims in connection with the selling of their route have released their claims in this lawsuit.  See Doc. 83 at pp. 9, 11, 22, 24, 26-27; Doc. 83-8 at ¶ 6. Also, S-L asserts there are 8 Class Members (including 5 of these former IBOs) who released their claims in this lawsuit by participating in a settlement in another lawsuit.  In recognition of this defense,[9] these 49 Class Members shall be allocated half share (or half credit) for each workweek during

---

[7] This includes two Class Members who no longer contract with S-L but who did not execute a general release of claims in connection with the sale of their route.

[8] This methodology is based on the well-recognized rule that, in evaluating a class action settlement's fairness, "the relevant settlement amount is the total amount of the settlement even though the total settlement amount includes attorney's fees." Solkoff v. Pennsylvania State University, 435 F. Supp. 3d 646, 655 (E.D. Pa. 2020); accord Devine v. Northeast Treatment Centers, Inc., 2021 WL 4803819, 2021 U.S. Dist. LEXIS 197924, *10 (E.D. Pa. Oct. 14, 2021).

[9] S-L further asserts that Counsel for the Parties should coordinate and potentially adjust the settlement amounts for the eight IBOs who participated in a prior settlement involving S-L claims to avoid any improper double recovery pursuant to the terms of that court-approved settlement.

the statutory period.[10]  Significantly, the maximum average gross settlement

allocation per Class Member stands at **$15,289** ($1,269,000[11] *divided* by 83 Class

Members).  <u>See</u> <u>id.</u>

In exchange for the above consideration, Class Members are bound by a

release that is generally limited to "all claims that were or could have been raised

in the Action."  Doc. 116-1 at ¶ 3.8(b).  Meanwhile, S-L releases certain

counterclaims and third-party claims asserted against Class Members and their

business entities.  <u>See</u> <u>id.</u> at ¶ 3.8(c); <u>see also</u> <u>id.</u> at ¶ 3.8(d).[12]

If the Court preliminarily approves the settlement, each Class Member will

receive a notice form that describes the litigation, the settlement, and the release.

<u>See</u> Doc. 116-1 at ¶ 2.5(c) and Ex. A.  Importantly, each notice form is *individually*

addressed to each Class Member and details both his/her anticipated allocation

amount and the method by which the payment amount is determined.  <u>See</u> <u>id.</u>

The notice forms also inform each Class Member of his/her right to object to

---

[10] Such workweeks for these 49 Class Members accounts for approximately only
42.27% of the total Applicable Workweeks (9,910 weeks out of 23,445 weeks).
Each Applicable Workweek for those 49 Class Members is worth a gross amount
of $34.32.  However, in the proposed Notice form, the weekly amounts listed are
slightly lower, in order to be conservative to account for the scenario where the
reserve fund is not redistributed to Qualified Class Members.  <u>See</u> n. 6, <u>supra</u>; Doc.
116-1 at ¶ 1.25.

[11] The $1,269,000 is arrived at by subtracting the requested $20,000 service award
and $11,000 in administration costs from the settlement fund.

[12] However, Maranzano, who is requesting a $20,000 service award, has executed a
general release.  <u>See</u> <u>id.</u> at ¶ 3.8(a).

or exclude himself/herself from the settlement.  See id. at Ex. A.  Individuals who

exclude themselves from the settlement will neither release claims nor receive a

settlement payment.  See id.

## II. ARGUMENT

### A. Preliminary Approval of Class Action Settlements.

Class action settlements must be approved by the Court as fair.  See Fed. R.

Civ. P. 23(e)(2).  This judicial approval process entails three steps:  (1) the Court

decides whether to "preliminarily approve" the settlement; (2) if the settlement is

preliminarily approved, notice is issued to class members so they can decide

whether to object to or exclude themselves from the proposed settlement; and (3)

after the notice period has expired, the Court conducts a fairness hearing and

makes a final approval decision.  See generally Manual for Complex Litigation,

Fourth, at §21.63 (Federal Judicial Center 2008).

Rule 23(e)(1), entitled "Grounds for Decision to Give Notice," addresses the

pertinent standard at the preliminary approval stage:

> (e) Settlement, Voluntary Dismissal, or Compromise.  The claims, issues, or
> defenses of a certified class – or a class proposed to be certified for purposes
> of settlement – may be settled, voluntarily dismissed, or compromised only
> with the court's approval.  The following procedures apply to a proposed
> settlement, voluntary dismissal, or compromise:
>
> (1) *Notice to the Class.*
>
> (A) *Information That Parties Must Provide to the Court.* The parties
> must provide the court with information sufficient to enable it to
> determine whether to give notice of the proposal to the class.

(B)  *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1); see, e.g., Hall v. Accolade, Inc., 2019 U.S. Dist. LEXIS 143542, *4-5 (E.D. Pa. Aug. 23, 2019).

### B. Preliminary Approval is Warranted.

As noted above, Rule 23(e)(1)(B) establishes that, at the "preliminary approval" stage, a district court must address two questions: (i) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)" and (ii) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Here, both requirements are satisfied:

### 1.  The Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)."

To determine whether the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we must look to Rule 23(e)(2)'s approval factors.[13] These factors appear under the heading "Approval of the Proposal":

(2)  *Approval of the Proposal.* If the proposal would bind class

---

[13] Although many Courts in the past have used the "Girsh" factors in analyzing a potential class action settlement, as explained in Hall, "[t]he Girsh factors predate the recent revisions to Rule 23, which now explicitly identifies the factors that courts should apply in scrutinizing proposed class settlements, and the discussion in Girsh substantially overlaps with the factors identified in Rule 23." Hall, 2019 U.S. Dist. LEXIS 143542, at *7 n.1.

members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

    (i)  the costs, risks, and delay of trial and appeal;
    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As discussed below, each of these factors is likely to be satisfied:

***Rule 23(e)(2)(A) – Whether Maranzano and class counsel "have adequately represented the class"*:**  This factor focuses "on the actual performance of counsel acting on behalf of the class."  Hall, 2019 U.S. Dist. LEXIS 143542, at *8-9 (internal quotations omitted); see also In re NFL Players Concussion Injury Litig., 821 F.3d 410, 439 (3d Cir. 2016) (class counsel should "develop[] enough information about the case to appreciate sufficiently the value of the claims").

13

Here, this factor is likely to be satisfied.  Prior to entering into mediation, Plaintiff's Counsel engaged in significant motion practice and conducted extensive discovery, see pp. 6-7, supra, and thoroughly analyzed the pertinent legal and damages issues.  Plaintiff's Counsel have extensive experience litigating independent contractor "misclassification" cases, see, e.g., Mode v. S-L Distribution Co., 2021 U.S. Dist. LEXIS 225822 (W.D.N.C. Nov. 12, 2021); Rivera v. Martin's Famous Pastry Shoppe, Inc., 2021 U.S. Dist. LEXIS 28829 (M.D. Pa. Feb. 16, 2021) (Wilson, J.); Tavares v. S-L Distribution Co., 2016 U.S. Dist. LEXIS 57689 (M.D. Pa. May 2, 2016) (Jones, J.), and they brought such experience to bear in litigating this lawsuit and negotiating the settlement.

**Rule 23(e)(2)(B) – Whether the settlement "was negotiated at arm's length":**  This factor is satisfied where, as here, the parties reached settlement during negotiations overseen by a third-party mediator.  See Hall, 2019 U.S. Dist. LEXIS 143542, at *9-10.

**Rule 23(e)(2)(C)(i) – Whether the relief "is adequate, taking into account the costs, risks, and delay of trial and appeal":**  This factor "balances the relief that the settlement is expected to provide to class members against the cost and risk involved in pursuing a litigated outcome."  Hall, 2019 U.S. Dist. LEXIS 143542, at *10 (internal quotation omitted).  Such analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement

14

figure." Id. (internal quotation omitted).  As the Third Circuit has observed, "[t]he role of a district court is not to determine whether the settlement is the fairest possible resolution – a task particularly ill-advised given that the likelihood of success at trial . . . can only be estimated imperfectly."  In re Baby Products Antitrust Litig., 708 F.3d 163, 173-74 (3d Cir. 2013).

Here, this factor is likely to be satisfied.  First, Judge Jones recognized early on in this lawsuit that S-L may ultimately succeed in showing that Maranzano was not an employee:  "Defendant may succeed in showing that the Distributor Agreement is a valid document that accurately portrays a lawful business relationship.  Indeed, Defendant may well show that there is some *other* reason that Plaintiff is not legally in its employ."  Maranzano, 2020 U.S. Dist. LEXIS 239355, at *10.  Thus, it is anticipated that S-L would file a motion for summary judgment after the conclusion of discovery seeking to dismiss Maranzano's claims on the basis that Maranzano and other Class Members are independent contractors, and not employees, and therefore they are not entitled to the protections afforded under the NJWPL and NJWHL.[14]

---

[14] In New Jersey, the "ABC test" is the legal standard that would determine whether IBOs are "employees" under the NJWPL and NJWHL, see Hargrove v. Sleepy's, LLC, 106 A.3d 449 (N.J. 2015).  In particular, with respect to prongs 1 and 3 of the ABC test, the parties would continue to vigorously disagree over whether IBOs are "free from [S-L's] control and direction" and whether distributors are "customarily engaged in an independently established trade,

Second, S-L would also likely reassert the argument raised in its motion to dismiss that IBOs do not receive "wages" as defined under the NJWPL.  See, e.g., Mode, 2019 U.S. Dist. LEXIS 35460 (dismissing North Carolina wage payment and deduction claim after finding that IBOs were not paid "wages"); Troche v. Bimbo Foods Bakeries Distribution, 2015 U.S. Dist. LEXIS 108944, *18 (W.D.N.C. Aug. 18, 2015) (finding that summary judgment in favor of distribution company was proper as plaintiff's agreement "takes [his] earnings out of the statutory definition of 'wages.'").

Third, Maranzano would file a motion for summary judgment after the close of discovery seeking to dismiss S-L's unjust enrichment counterclaim.  However, in the meantime, Maranzano would have continued to seek discovery from S-L regarding whether S-L achieved any benefits from its classification of IBOs as independent contractors.  Such discovery would be time-consuming and would probably result in motion practice given some of the sensitive topics of inquiry.

Fourth, in absence of a settlement, the Court would still need to resolve Maranzano's motion to dismiss S-L's third-party complaint which has been fully briefed.  See Docs. 61, 87, 95, 97, 98. The Court would also need to resolve Maranzano's initial motion for Rule 23 class certification, which S-L previously

occupation, profession or business."

16

opposed and has been fully briefed. <u>See</u> Docs. 62, 83, 89. To that end, there is a risk that the case may not be certified in an adversarial context.  <u>See</u> <u>Amchem</u> <u>Products, Inc. v. Windsor</u>, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.").  This settlement avoids any uncertainty, while ensuring that Class Members receive consideration now for a release of their claims.

Fifth, *even if* Maranzano and other IBOs were found to be "employees" under the NJWPL and NJWHL, and/or a Rule 23 class was certified, the parties would disagree about what types of damages can be recovered.  As to the NJWPL claim, Maranzano would assert that IBOs are entitled to reimbursement of not just deductions from their pay (route loan repayments, truck loan repayments, truck rental payments, and charges for electronic equipment) but also reimbursement for any expenses incurred (*e.g.*, gas, vehicle maintenance/repairs, and insurance).  S-L would disagree and argue, among other things, that the expenses incurred by IBOs do not quality as "diversions" under the NJWPL and moreover, that the "deductions" from Class Members' pay are nonetheless valid under the NJWPL. <u>See</u> N.J.S.A. 34:11-4.4.  As to the NJWHL claim, the parties would continue to vigorously dispute the amount of overtime hours, if any, that Class Members worked.

Sixth, if the case proceeded to trial as a class action, the Court would be presented with extensive briefing regarding the scope and propriety of "representative" evidence and testimony.  Plaintiff's Counsel would probably retain an expert for purposes of presenting damages to the jury.  And, if Plaintiff's Counsel retained an expert, S-L would probably do the same.

In sum, the outcome of the multiple factual and legal disputes highlighted above is uncertain, and continued adversarial litigation would be a long, complicated, and expensive process for the parties and the Court.

Notwithstanding all of the risks identified above, Plaintiff's Counsel believes the settlement offers a substantial recovery for the 83 Class Members. Each Applicable Workweek for a Class Member who currently contracts with S-L is worth a gross amount[15] of $68.63 for each Applicable Workweek and these Class Members worked 13,534 weeks out of the 23,445 total Applicable Workweeks covered by this settlement.[16]  Significantly, the maximum average

---

[15] See n. 8, supra.

[16] Specifically, the 49 Class Members who have signed releases covering claims against S-L shall be allocated a half share (or half credit) for each workweek during the statutory period due to S-L's defense for purposes of allocating the total maximum gross settlement payment.  Such workweeks for these 49 Class Members accounts for approximately only 42.27% of the total Applicable Workweeks (9,910 weeks out of 23,445 weeks).  Each Applicable Workweek for those 49 Class Members is worth a gross amount of $34.32.

18

gross settlement payout per Class Member stands at **$15,289** ($1,269,000[17] *divided*

by 83 Class Members).  See *id.*  Plaintiff's Counsel believes this is an excellent

recovery when viewed against the significant litigation risks.  At the fairness

hearing, Plaintiff's Counsel will further explain how risk analysis requires that the

Class Members' potential damages be substantially discounted.

**Rule 23(e)(2)(C)(ii) – Effectiveness of the "proposed method of**

**distributing relief" and "the method of processing class-member claims":**  This

factor is likely to be satisfied where Class Members are not required to file claim

forms in order to receive payments and where the notice form clearly describes the

process for Class Members to object to or exclude themselves from the settlement.

See Hall, 2019 U.S. Dist. LEXIS 143542, at *11-12.  Such is the case here. See

Doc. 116-1 at ¶ 3.

**Rule 23(e)(2)(C)(iii) – The terms and timing of any proposed attorney's fee**

**award:**  This factor recognizes that "[e]xamination of the attorney-fee provisions

may also be valuable in assessing the fairness of the proposed settlement."

Advisory Committee Notes.  Here, the requested attorneys' fees and expenses of

$433,333, which will be paid at the same time as the payments to Qualified Class

Members, see Doc. 116-1 at ¶ 3.1, represents only **33.33%** of the $1,300,000

---

[17] The $1,269,000 is arrived at by subtracting the requested $20,000 service award
and $11,000 in administration costs from the settlement fund.

settlement fund.  Such a recovery is in accordance with fee awards in other wage and hour class actions.  See Creed v. Benco Dental Supply Co., 2013 U.S. Dist. LEXIS 132911, *17 (M.D. Pa. Sept. 17, 2013); Craig v. Rite Aid Corp., 2013 U.S. Dist. LEXIS 2658, *47 (M.D. Pa. Jan. 7, 2013).

At the final approval stage, Maranzano will fully brief the fairness and reasonableness of the requested attorneys' fees under the Third Circuit's Gunter factors.  See, e.g., Craig, 2013 U.S. Dist. LEXIS 2658, at *44-49.  Such detailed analysis is not necessary at the preliminary approval stage.  See, e.g., Del Valle, 2021 U.S. Dist. LEXIS 153355, at *2 n.1; Flores v. Eagle Diner Corp., 2019 U.S. Dist. LEXIS 141743, 21 (E.D. Pa. Aug. 21, 2019); Hall, 2019 U.S. Dist. LEXIS 143542, at *12.  This is especially true where, as here, any disapproved attorney's fees will enhance the Class Members' payments (rather than revert to S-L).  See Doc. 116-1 at ¶ 3.2(b).

***Rule 23(e)(2)(C)(iv) – Any agreement required to be identified under Rule 23(e)(3)***:  Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal."  Here, this factor is likely to be satisfied because the accompanying Agreement is the *only* agreement connected to the subject matter of this lawsuit or settlement.

***Rule 23(e)(2)(D) – Whether the settlement treats class members equitably relative to each other***:  This factor seeks to prevent the "inequitable treatment of

20

some class members *vis-a-vis* others." Fed. R. Civ. P. 23, Advisory Committee Notes to December 1, 2018 Amendments.  Here, this factor is satisfied because each Class Member's share of the settlement proceeds is based on the number of weeks he/she worked pursuant to a DA with S-L during the class period.  See Doc. 116-1 at ¶ 1.3.  A reasonable adjustment is made to the workweeks for an individual who has already signed a release of claims against S-L, and the individual shall receive a half share (or half credit) for each workweek during the statutory period, in recognition of the fact that S-L intended to assert that these Class Members could not recover in this lawsuit.  See p. 9, supra; see also n.9, supra (addressing the 8 IBOs who participated in the court-approved settlement of another lawsuit).  As such, each Class Members' settlement payment is directly proportional to the duration for which he/she was purportedly subject to the challenged business practices and recognizes that a substantial number of class members are subject to a "release" defense.

In sum, as discussed above, the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(B)(i).[18]

---

[18]   As indicated earlier, the settlement anticipates that Maranzano will receive a $20,000 service award.  This award compares favorably to awards in other wage and hour actions.  See, e.g., Roxberry v. Snyders-Lance, Inc., 2017 U.S. Dist. LEXIS 193573, *5-6 (M.D. Pa. Nov. 15, 2017) (approving $19,000 service awards to each of the nine named plaintiffs); In re Janney Montgomery Scott LLC Financial Consultant Litigation, 2009 U.S. Dist. LEXIS 60790, *36 (E.D. Pa. July

## 2.  The Court "will likely be able to certify the class."

Having determined that the parties "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second half of the preliminary approval inquiry: whether the Court "will likely be able to . . . certify the class." Fed. R. Civ. P. 23(e)(1)(B)(ii).  Here, Maranzano asks the Court to certify an 83-member settlement class comprised of all IBOs "who satisfy all of the following three criteria: (1) are or were a party to a Distributor Agreement with S-L; (2) owned and/or operated a route that included a retail customer in the State of New Jersey at any time between November 20, 2013 and October 20, 2021; and (3) who have not signed an Alternative Dispute Resolution agreement with S-L."  Doc. 116-1 at ¶ 1.29.

To obtain class certification, Maranzano must satisfy Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  Reyes v. Netdeposit, LLC, 802 F.3d 469, 482 (3d Cir. 2015). Next, he must satisfy Rule 23(b)(3)'s two additional requirements: (5) common questions of law or fact must "predominate over any questions affecting only individual members" and (6) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P.

16, 2009) (approving $20,000 service award for each of the three named plaintiffs). Regardless, courts generally defer assessments of service awards until the final approval stage.  See Hall, 2020 U.S. Dist. LEXIS 52632, at *25-33.

23(b)(3).

As discussed below, and for settlement purposes only, Maranzano is likely to satisfy the six Rule 23 requirements:

**Numerosity:**  Rule 23(a)(1)'s numerosity requirement is generally satisfied where, as here, the class includes over 40 members.  See Galt v. Eagleville Hospital, 310 F. Supp. 3d 483, 490 (E.D. Pa. 2018) (citing cases).

**Commonality:**   The commonality "bar is not a high one," Rodriguez v. National City Bank, 726 F.3d 372, 382 (3d Cir. 2013), and "is easily met," Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994).  Commonality "does not require perfect identity of questions of law or fact among all class members."  Reyes, 802 F.3d at 486.  Since "'even a single common question will do,'" id. (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338 (2011)), commonality is satisfied if "'plaintiffs share at least one question of fact or law with the grievances of the prospective class,'" id. (quoting Rodriguez, 726 F.3d at 382).

Here, Maranzano believes the commonality requirement is likely to be satisfied.  As Judge Jones explained in another independent contractor misclassification lawsuit arising under Massachusetts wage law:

> Here, all Plaintiffs . . . allege that they were misclassified as independent contractors and that, pursuant to the Massachusetts Wage Act, they should have been hired by Defendants as employees. . . .  Thus, the success of all their claims turns on this Court's interpretation of the Act, and whether certain aspects it, critical to Plaintiffs' success, have been preempted by the Federal

23

> Aviation Administration Authorization Act.   Because of this
> common argument, the cases put forth by the class members and
> the named representatives share questions of law and fact that
> determine their ability to receive the requested remedy. Thus, the
> commonality requirement is easily met.

Tavares, 2016 U.S. Dist. LEXIS 57689, at *17; see also Williams v. JaniKing of

Philadelphia, Inc., 837 F.3d 314, 325 (3d Cir. 2016) ("Plaintiffs' [Pennsylvania]

WPCL misclassification claim can be resolved by evidence that is common to the

class"); Rivera, 2021 U.S. Dist. LEXIS 28829, at *3 (certifying for settlement

purposes).

**Typicality:**  Rule 23(a)(3)'s typicality requirement "is intended to assess

whether the action can be efficiently maintained as a class action and whether the

named plaintiffs have incentives that align with those of absent class members so

as to assure that the absentees' interests will be fairly represented."  Baby Neal, 43

F.3d at 57; accord Stewart v. Abraham, 275 F.3d 220, 227 (3d Cir. 2001).

Lawsuits challenging the same conduct which "affects both the named plaintiffs

and the putative class usually satisfy the typicality requirement irrespective of the

varying fact patterns underlying the individual claims."  Baby Neal, 43 F.3d at 58.

"[E]ven relatively pronounced factual differences will generally not preclude a

finding of typicality where there is a strong similarity of legal theories."  Id.;

accord Stewart, 275 F.3d at 227-28.

Here, Maranzano maintains typicality is likely to be found because

24

Maranzano and each Class Member shares the same interest of recovering alleged unpaid wages from S-L based on S-L's alleged misclassification of IBOs as non-employee contractors.  In sum, Maranzano's interests and legal claims are entirely aligned with those of the class.

**Adequacy:**  This requirement is satisfied if both: "(a) the plaintiff's attorney [is] qualified, experienced, and generally able to conduct the proposed litigation, and (b) the Plaintiff [does] not have interests antagonistic to those of the class," Weiss v. York Hospital, 745 F.2d 786, 811 (3d Cir. 1984) (internal quotations omitted).

Here, adequacy is likely to be satisfied.  First of all, Plaintiff's Counsel are experienced employment rights lawyers with substantial class action experience. See generally Declaration of Mark Gottesfeld ("Gottesfeld Dcl.") (Doc. 116-6); Declaration of Harold Lichten ("Lichten Dcl.") (Doc. 116-3).  Moreover, Maranzano does not have any interests that are antagonistic to the class.

**Predominance:**  Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The Supreme Court recently summarized the predominance test as follows:

> The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  When "one or more of the central issues in the action are common to the class and can be said

> to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (internal citations omitted).

Here, Maranzano believes predominance is satisfied because, as discussed with respect to commonality, the success or failure of Maranzano's challenge to S-L's independent contractor classification will turn on the Court's application of common legal principles to a set of common set of facts.  As Judge Jones observed:

> In the context of a predominance analysis, we reiterate that the Court's interpretation of the Massachusetts Wage Act, and specifically whether certain aspects of the Act are preempted by the Federal Aviation Administration Authorization Act, predominates over all of Plaintiffs' claims. The resolution of the preemption issue will be the same in each case, and will impact the rights of every class member in the same way. Further, the facts of each case are largely constrained by the Distributor Agreements, which we have already described as substantially similar to one another. While we note that the damages to be awarded in each Plaintiff's claim would require individual calculation because some Plaintiffs may not have worked as frequently or for as many weeks as others, this disparity does not create cause to defeat class certification. Importantly, the Agreement provides that all class members' damages awards will be calculated in the same way, and the only differentiating factor will be the number of weeks that each worked.

Tavares, 2016 U.S. Dist. LEXIS 57689, at *21-22.  The same can be said here.

Moreover, Maranzano contends S-L's arguments regarding whether purported "profits" can serve as the legal predicate for a New Jersey "wage" claim is a class-

wide legal issue that will be resolved based on a common set of facts.  See pp. 15-16, supra.

**Superiority:**   Rule 23(b)(3) also requires the Court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication," In re Prudential Insurance Co. America Sales Practice Litig., 148 F.3d 283, 316 (3d Cir. 1998), and "sets out several factors relevant to the superiority inquiry," id. at 315-16.  As discussed below, Maranzano contends these factors favor class certification:

First, Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions."  This requirement is intended to protect against class certification where individual class members have a strong interest in "individually controlling" the litigation because, for example, the individual claims are emotionally charged or involve significant damages amounts.  See William Rubenstein, Alba Conte, and Herbert B. Newberg, Newberg on Class Actions at §4:69.  This is not such a lawsuit.  Here, the maximum average gross payout stands at $15,289, and the legal issues do not elicit much emotion.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members.  This factor is not relevant because no related litigation exists.

Third, Rule 23(b)(3)(C) requires courts to consider the desirability of "concentrating the litigation of the claims in a particular forum."  Fed. R. Civ. P. 23(b)(3)(C).  Here, concentration of all claims in this Court is arguably required under the DA's uniform forum selection provisions.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action."  Fed. R. Civ. P. 23(b)(3)(D).  This requirement is automatically satisfied when a case is certified for settlement purposes.  See Amchem, 521 U.S. at 620.

In sum, as discussed above and for settlement purposes only, the Court "will likely be able to . . . certify the class."  Fed. R. Civ. P. 23(e)(1)(B)(ii).

### 3.  The proposed notice satisfies Rule 23(c)(2)(B).

When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort."  Id. at 23(c)(2)(B).  Such notice can be effectuated through "United States mail, electronic means, or other appropriate means."  Id.  Also, any notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may

enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed R. Civ. P. 23(c)(2)(B).

Here, all of the above requirements are satisfied. The Claims Administrator will mail to each Class Member a package containing the notice form. <u>See</u> Doc. 116-1 at ¶ 2.5(c); Doc. 116-1 at Ex. A. If the post office returns any package with a forwarding address, the Claims Administrator will promptly re-mail the package to the forwarding address. <u>Id.</u> at ¶¶ 2.5(c)-(d). If the post office returns any package without a forwarding address, the Claims Administrator will work diligently to obtain an updated address and will promptly mail the package to any updated address. <u>Id.</u> Individuals will have forty days from the preliminary approval date to exclude themselves from or object to the settlement. <u>See id.</u>

Moreover, the notice forms are written in clear language and accurately describe the nature of the action, the settlement, the scope of the release, and the process Class Members must follow to exclude themselves from or object to the settlement. <u>See id.</u> Importantly, each notice form is individualized to provide the Class Members with his/her anticipated settlement payment amount. <u>See id.</u>

**C. W&S and LRR should be appointed Interim Class Counsel.**

Where, as here, a class action lawsuit is settled prior to class certification,

the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action."  <u>See</u> Fed. R. Civ. P. 23(g)(3).  Then, at the final approval stage, these lawyers can seek to be appointed class counsel in conjunction with the certification of the settlement class. <u>See</u> <u>id.</u> at 23(g)(1).

Here, W&S and LRR respectfully ask the Court to appoint them interim class counsel.  Both firms are comprised of experienced employment rights lawyers with extensive class action experience.  <u>See generally</u> Gottesfeld Dcl. (Doc. 116-2); Lichten Dcl. (Doc. 116-3); <u>see</u>, <u>e.g.</u>, <u>Rivera</u>, 2021 U.S. Dist. LEXIS 28829, at *3-4 (approving W&S and LRR to serve as Class Counsel).

## III.  CONCLUSION

For the above reasons, the Court should grant this Motion and enter the attached proposed order.

Date:  February 18, 2022            Respectfully,

_Mark J. Gottesfeld_
_____
Peter Winebrake
R. Andrew Santillo
Mark J. Gottesfeld
Michelle Tolodziecki
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

Harold L. Lichten (*pro hac vice*)
Matthew Thomson (*pro hac vice*)
Zachary L. Rubin (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

*Proposed Class Counsel*

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify, pursuant to Local Civil Rule 7.8(b)(2), that this brief

numbers 7,373 words.

Date:  February 18, 2022

Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491